## STATE v. RANKIN.

Laws 1897, Chapter 102, imposing a license fee on solicitors taking orders for mercantile establishments, violates the interstate commerce clause of the constitution of the United States, as against a salesman for a house in another state selling clothing by sample, to be made up from measurements taken by the salesman; and this although there is no discrimination as to the amount of the fee between resident and nonresident establishments.

(Opinion filed August 31, 1898.)

Error to circuit court, Hughes county, Hon. LORING E. GAFFY, Judge.

Charles Henry Rankin was convicted of soliciting orders for goods, wares, and merchandise without first having obtained a license, and he brings error. Reversed.

*Joseph Donahue* and *Thomas Drake* for plaintiff in error.

The law under which this conviction was had is unconstitutional in that it grants special privileges and immunities to certain classes of citizens §18 Art. 6 Const. S. D; *In re* Grice

79 Fed. 627; Yick Wo v. Hopkins 118 U. S. 356; Walby v. Kennedy 2 Yerg. 555; Vanzant v. Waddel 2 Yerg. 270; *Ex parte* Jentzsch 44 Pac. 803; Keine v. City of Chicago 46 Ill. App. 445; Passadena v. Stinson 91 Cal. 238; State v. Granneman 33 S. W. 784. In is also unconstitutional because it seeks by its terms to impose excessive fines and penalties § 23 Art. 6 Const. S. D.; Edin v. People 43 N. E. 1108; Tacoma v. Krech 46 Pac. 255. It is also unconstitutional because it violates the interstate commerce clause of the constitution of the United States Asher v. Texas 128 U. S. 129; Robbins v. Shelby Co. Taxing Dist. 120 U. S. 489; Welton v. Missouri 91 U. S. 275; Brown v. Maryland 12 Wheat. 419; Cook v. Pennsylvania 97 U. S. 566; Gibbons v. Ogden 9 Wheat. 1; Brown v. Houston 114 U. S. 622; Woodruff v. Parkam 8 Wall. 123; LeLoup v. Mobile 127 U. S. 640; McLaughlin v. South Bend 10 L. R. A. 357. Case of State Freight Tax 82 U. S. 15; Ratterman v. W. U. Tel. Co. 127 U. S. 411; Strutinburgh v. Hennick 129 U. S. 141; Corson v. Maryland 120 U. S. 502; Leisy v. Hardin 135 U. S. 100; Morrill v. State 38 Wis. 437; Wrought Iron Range Co. v. Johnson 8 L. R. A. 273; State v. Ages 83 Ala. 110; Simmons Hardware Co. v. McGuire 39 La. 848; Fort Scott v. Pelton 39 Kan. 764.

*Melvin Grigsby*, (Attorney General,) *T. P. Estes*, (States Attorney, Hughes county,) and *Shunk & Hughes* for defendant in error.

FULLER, J. Upon a complaint charging plaintiff in error with the "crime of peddling, hawking, and soliciting orders for goods, wares, and merchandise without having first obtained a license," a conviction was had in circuit court, which is

now to be reviewed for the purpose of determining the constitutionality of the following provision contained in chapter 102 of the laws of 1897, entitled ''An act to license peddlers and solicitors'': ''Each peddler or solicitor taking orders for groceries, clothing, hardware, or other mercantile establishments shall pay a license of not less than seventy-five dollars ($75) nor more than one hundred twenty-five dollars ($125) per year. * * * The provisions of this act shall not be construed to apply to runners traveling for wholesale houses and taking orders from merchants only, nor to peddlers or hawkers in farm products. Any person violating the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty-five dollars ($25) nor more than one hundred dollars ($100).'' The following are the conceded facts: Plaintiff in error, a resident of Minneapolis, Minn., was at the time in question a traveling salesman in the employ of the Minneapolis Tailoring Company, engaged at that place in making men's clothing according to measurement from goods kept in stock, and pursuant to orders obtained by plaintiff in error by showing samples thereof, and soliciting business wherever a customer could be found. At the time of his arrest the accused was exhibiting such samples in the city of Pierre for the purpose of procuring orders as above indicated, and had neither obtained nor applied for a license.

The question, though important. and presented to this court for the first time, is governed by certain well-established principles, and its proper solution requires no more than the application thereof in the light of reason and the authorities. The constitution of the United States having ordained ''that congress shall have power to regulate commerce with foreign

nations and among the several states" (article 1, §8), that power is necessarily exclusive when its exercise involves the regulation of interstate commerce, or the imposition of a burden by one state upon the inhabitants of another. In the sense contemplated by the framers of the constitution, states, as such, whether foreign or within the sisterhood, have practiually no traffic one with the other, and the expression "commerce with foreign nations and among the several states" relates exclusively to subjects or citizens of such nations or states, and the operation of every revenue or license measure is limited to the jurisdiction of the state wherein enacted. The branch of business in which this nonresident employer of plaintiff in error was engaged is of a legitimate nature, and in character such as to render sales in this state practically impossible without a prior order obtained by a traveling agent, whose duty it is to carefully measure the customer, ascertain his preferences, and transmit the same to another state, where the desired garments are made to order from goods in stock, there subject to taxation, and here burdened with a maximum assessment of $125 for each county in the state, which effectually amounts to a prohibition, rather than an act in restraint, of trade. In treating a case identical in principle, Mr. JUSTICE BRADLEY observes: "If a state can, in this way, impose restrictions upon interstate commerce for the benefit and protection of its own citizens, we are brought back to the condition of things which existed before the adoption of the constitution, and which was one of the principal causes that led to it." And again: "To say that such a tax is not a burden upon interstate commerce is to speak at least unadvisedly, and without due attention to the truth of things." Replying to the contention that no discrimi-

nation is made between foreign and domestic solicitors,—a point here relied upon as material,—the learned jurist says: "That does not meet the difficulty. Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state. * * * If the selling of goods by sample, and the employment of drummers for that purpose, injuriously affect the local interest of the states, congress, if applied to, will undoubtedly make such reasonable regulations as the case may demand. And congress alone can do it; for it is obvious that such regulations should be based on a uniform system, applicable to the whole country, and not left to the varied, discordant, or retaliatory enactments of forty different states. The confusion into which the commerce of the country would be thrown by being subject to state legislation on this subject would be but a repetition of the disorder which prevailed under the Articles of Confederation. * * * The state is not bound to tax its own drummers; and if it does so, whilst having no power to tax those of other states, it acts of its own free will, and is itself the author of such discrimination. As before said, the state may tax its own interstate commerce." Robbins v. Taxing Dis't, 120 U. S. 489, 7 Sup. Ct. 592. While the license tax is apparantly imposed upon the traveling agent regardless of the amount of business transacted, the irresistible effect of the law as applied to this case is to regulate commerce between states by compelling a Minneapolis firm to pay in advance for the privilege of attempting to procure customers in one of the counties of the state. Decisions too numerous to justify citation, holding that interstate and foreign traffic is entirely exempt from such a tax, regardless of the method of imposition,

are grounded upon the doctrine that a state has no power, un-der the constitution, to burden such commerce, either by way of a direct tax upon the subject matter, or by requiring those engaged in the occupation of soliciting orders therefor, to be filled by some person residing within another state, to pay a license for such privilege.   So held in Brennan v. City of Ti-tusville, 14 Sup. Ct. 829, 153 U. S. 289; Asher v. Texas, 128 U. S. 129, 9 Sup. Ct. 1; State Freight Tax Case, 15 Wall. 232; Ward v. Maryland, 12 Wall. 418; Brown v. State, 12 Wheat. 419; Stanly v. Railroad Co. (Mo. Sup.) 13 S. W. 709; Fargo v. Michigan, 121 U. S. 230, 7 Sup. Ct. 857; Moran v. New Or-leans, 112 U. S. 69, 5 Sup. Ct. 38; Pickard v. Car Co., 117 U. S. 34, 6 Sup. Ct. 635; Walling v. Michigan, 116 U. S. 446, 6 Sup. Ct. 454.   We find that commerce among the states con-sists of traffic between their inhabitants, and includes the pur-chase and sale of commodities through the agency of persons employed to solicit orders by the use of samples; and the pow-er to license and regulate such business is in congress exclu-sively.   Our conclusion, therefore, is that the enactment under consideration, as applied by the court below to plaintiff in er-ror, is unconstitutional and void.   The judgment appealed from is reversed, with the direction that the accused be dis-charged.