## STATE v. DELAMATER.

Rev. Pol. Code, § 2834, requires the payment in each county in which the business is done of a license on the business of selling or offering for sale intoxicating liquors by a traveling salesman. Section 2838 makes it an offense to so sell without a license. Section 2852 makes all persons engaged in such unlawful selling, whether as owner or employe, equally liable as principals. *Held*, there was a violation of the statute by a traveling salesman for liquor dealers having their place of business in another state, where he, within the state, solicited orders for liquor though,

according to their conditions, they were forwarded to the dealers subject to their approval, and the liquor was delivered to the purchasers outside the state on board the cars.

The interstate commerce clause of the federal Constitution is not contravened by Rev. Pol. Code, §§ 2834, 2838, 2852, making it an offense for a traveling salesman to take orders for intoxicating liquor. without a license.

Haney, J., dissenting.

(Opinion filed, Aug. 22, 1905.)

Error to Circuit Court, Potter County. Hon. LORING E. GAFFY, Judge.

Jay Delamater was convicted of a violation of the liquor laws, and brings error. Affirmed.

Lee Stover, for plaintiff in error. Philo Hall, Attorney General, and S. M. Howard, State's Attorney (Aubrey Lawrence, of counsel), for the State.

HANEY, J. The evidence upon which the defendant was convicted is conceded to have established the following facts: "That the defendant, Jay Delamater, is now, and was on the 10th day of February, A. D. 1904, a traveling salesman employed by Lewis L. Metzger & Co., and that the said Lewis L. Metzger & Co. are residents of the city of St. Paul, in the state of Minnesota, and that the said Lewis L. Metzger & Co. have their place of business at the said city of St. Paul, and have no place of business in the state of South Dakota, and have had no such place of business in the said state of South Dakota. That on the 10th day of February, A. D. 1904, Jay Delamater, as such employe, was engaged as said traveling salesman in soliciting proposals or orders for said Lewis L. Metzger & Co. for the sale of intoxicating liquors in quantities less than five gallons from citizens and residents of and within the county of Potter and state of South Dakota, who were not merchants, traders, or dealers in intoxicating liquors; that on said date he solicited and requested proposals or orders from Ferdinand Renner and Paul Gross, who were not merchants, traders, or dealers in intoxicating liquors, at and in the county of Potter and state of South Dakota, soliciting or requesting proposals or orders from said last-named persons for the sale to them by Lewis L. Metzger & Co. of said intoxicating liquors. That the said proposals and orders were

procured by defendant from said named persons, forwarded to his principal, the said Lewis L. Metzger & Co., in the city of St. Paul, state of Minnesota. At said time no money was paid by either of the said persons to said defendant or to said Lewis L. Metzger & Co., and said proposals or orders were forwarded with the understanding that they were subject to the approval of said Lewis L. Metzger & Co., and that the defendant had no power or authority to approve said proposals or orders, nor to receive any money thereon. In addition to being subject to the approval of said Lewis L. Metzger & Co., said proposals or orders were conditioned that the said whisky so ordered should be·delivered to the said Ferdinand Renner and Paul Gross, hereinbefore named, f. o. b. cars at the city of St. Paul, in the state of Minnesota. That the said Ferdinand Renner and Paul Gross, hereinbefore named, were to pay the freight from the city of St. Paul, in the state of Minnesota, and were to make remittance of the purchase price of said goods to said Lewis L. Metzger & Co., at the city of St. Paul, in the state of Minnesota, within sixty days after receipt of said liquor in said county of Potter. That this defendant has never paid any license to the county of Potter or state of South Dakota, or to the treasurer, or to any one, as required by section 2834 of the Revised Political Code of the year 1903, of the state of South Dakota, and that the said defendant had not then and there, and has never, paid any license or fee whatsoever to any township, precinct, town, or city within said county or state; and that said liquor therein sold was intoxicating liquor, to-wit, whisky, and was not a proprietary patent medicine; and that the said defendant is not now, and never has been, a· licensed pharmacist under the laws of the state of South Dakota."

Article 6, c. 27, of the Revised Political Code, relating to intoxicating liquors, contains the following provisions: "In all townships, precincts, towns and cities of this state there shall be annually paid the following license upon the business of selling or keeping for sale by all persons whose business in whole or in part consists in selling or keeping for sale in this state distilled, brewed· or malt liquors, or mixed liquors as follows: * * * Upon the business of selling or offering for sale any of the above mentioned liquors at

retail by any traveling salesman who solicits orders by the jug or bottle in lots of less than five gallons, two hundred dollars per annum. Said license to be paid in each county in which said traveling salesman does business in accordance with the provisions of section 2836. * * * All persons engaged in the selling or keeping for sale of any of the liquors mentioned in this article, whether as owner or as clerk, agent servant or employe, shall be equally liable as principals for any violation of the provisions of this article." Rev. Pol. Code, §§ 2834, 2852.

Defendant contends: (1) That he did not violate the law; (2) that if he did, it conflicts with the interstate commerce clause of the federal Constitution, and is invalid. "The Supreme Court of the United States is the one ultimate judicial authority on all questions of interstate commerce. But as has been often pointed out, and even admitted by the court itself, the decisions of that high tribunal have been far from uniform, and any attempt to reconcile all that has been said and decided by it must end in confusion. The difficulty, if not impossibility, of reconciling all the decisions upon the subject, is shown by the extraordinary number of dissenting opinions in the cases. Most of the important decisions were rendered by a divided court. Still it can safely be said that the differences of opinion thus manifested have not been so much upon fundamental principles as upon the application of those principles to particular facts and the construction of the various state statutes which have been under consideration. The principles themselves are fairly well settled. In view of these facts the Supreme Court has said that it would be a useless task to undertake to fix an arbitrary rule by which the line separating the powers of the state from the exclusive power of Congress in this regard must in all cases be located, and that it is better to settle each case as it arises upon a view of the particular rights involved." 17 Am. & Eng. Ency. Law, 41. It is therefore especially important to have the real issues presented by this appeal accurately defined. The nature of the legislation assailed is no longer open to controversy in this court. It is an exercise of the police power. It is regulation, not taxation. State v. Buechler, 10 S. D. 156, 72 N. W. 114. It does not discriminate be-

tween resident and non-resident dealers. All persons, whose business in whole or in part consists in selling or keeping for sale intoxicating liquors in this state are required to procure a license before engaging in such business. If the defendant violated the law, it is because he was acting as the agent or employe of Metzger & Co., who were engaged within this state in the business of selling or offering for sale such liquors at retail by traveling salesman who solicited orders in lots of less than five gallons. The power of the state to impose restraints and burdens upon persons and property in conservation of the public health, good order, and prosperity is a power originally and always belonging to the states, not surrendered by them to the general government, nor directly restrained by the Constitution of the United States, and essentially exclusive. The power of Congress to regulate commerce among the several states, when the subjects of that power are national in their nature, is also exclusive. The failure of Congress to exercise this exclusive power in any case is an expression of its will that the subject shall be free from restrictions or impositions upon it by the several states. In re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572. That the regulation of the manufacture and sale of intoxicating liquors is a proper subject for the exercise of the police power is a proposition which has never for a moment been doubted. Black, Intoxicating Liquors, § 31. And it is now established beyond dispute that such liquors are legitimate subjects of interstate commerce. Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128; Vance v. Vandercook, 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100; In re Rahrer, supra. When the Wilson act was adopted such liquors were exempted from state regulation by operation of the interstate commerce clause to the same extent as other legitimate articles of commerce. A citizen of one state, notwithstanding the laws of another, had the right to import intoxicants into the latter, and there sell them in the original packages. Up to the point of time when the importation was sold or the original package broken by the importer, the state, in the absence of congressional permission, "had no power to interfere by seizure or any other action in prohibition of importation and sale by the foreign or non-

resident importer." Leisy v. Hardin, supra. The Wilson act, which was adopted for the purpose of allowing state laws to operate on liquor shipped from one state into another so as to prevent the sale of original packages in violation of the state laws, provides that "all fermented, distilled, or other intoxicating liquors or liquids transported into any state or territory, or remaining therein for use, consumption, sale, or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory, * * * and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." 17 Am. & Eng. Ency. Law, 293. By that act Congress "simply removed an impediment to the enforcement of the state laws in respect to imported packages in their original condition, created by the absence of a specific utterance on its part. It imparted no power to the state not then possessed, but allowed imported property to fall at once upon arrival within the local jurisdiction." In re Rahrer, supra. "Arrival within the state," as employed in that act, has been construed to mean arrival of the importation at its destination, and state regulation attaches to the subject of an interstate shipment only after such shipment has been consummated by the arrival of the goods at their destination and their delivery to the consignee. Rhodes v. State of Iowa, 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088. A consignee may receive for his own use regardless of state laws. Vance v. Vandercook, supra. So it would seem that these propositions have been established: (1) An importer of liquors from another state has no right to sell them in the original package or otherwise, except on the terms prescribed by the Legislature of the state where the sales are made. (2) When intoxicating liquors are shipped from one state into another, they do not become subject to any state police regulation on crossing the boundaries of the state into which they are shipped, but retain their character as an article of interstate commerce until delivered into the hands of the consignee; but upon such delivery they become subject to such regulations. (3) The receiver in one state of intoxicating liquors sent from another state has the constitutional right to receive it for his own use, without regard to any state law

to the contrary; but when received he can dispose of it in the original package or otherwise only on the terms prescribed by the state statutes. Beyond question all legitimate subjects of interstate commerce, other than intoxicating liquors, may be imported and sold by the importer in the original package ,and no feature of the transaction, from its inception to its consummation, is subject to a state regulation such as we are considering. "The negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce." Robbins v. Taxing Dist., 120 U. S. 489. Hence a state statute which requires that "each peddler or solicitor taking orders for groceries, clothing, hardware, or other mercantile establishments shall pay a license of not less than $75 nor more than $125 per year" in each county in which such soliciting is done is clearly unconstitutional when applied to the case of a traveling salesman employed by a Minnesota tailor in soliciting orders for men's clothing to be manufactured in that state and shippel to individual purchasers in this. State v. Rankin, 11 S. D. 144, 76 N. W. 299. But that case and the one at bar are easily distinguishable. In that case the court was dealing with a commodity which the importer had a right to import and sell in the condition in which it was imported, notwithstanding the state law. In this it is dealing with a commodity which the importer has a right to import notwithstanding the state law, but which he cannot sell within this state, in the original package or otherwise, without conforming to the requirements of the state statute. In that case the law, by its terms, required a license for the mere soliciting of orders. In this it only requires a license of those who engage in the business of selling or offering for sale within the state. As heretofore suggested, this law, when properly construed, does not, by its terms, impose any restrictions upon the traffic beyond its territorial boundaries, or before the intoxicants have by permission of Congress become subject to the police power of the state. If the St. Paul dealers were not engaged in the business of selling or offering for sale within this state, they did not violate the law, and cannot be heard to question its validity. If they were engaged in that business, they cannot escape its con-

sequences, because such business was state, and not interstate, commerce; the selling or offering for sale of intoxicants in the original package or otherwise within this state being subject to state regulation. Any enactment, the operation of which has a tendency to diminish the consumption of intoxicating liquors, may, in a sense, be said to indirectly interfere with interstate commerce in that commodity, but all such enactments are not for that reason invalid. The provision of the law here involved does not retard the consumption of intoxicants within this state, and thus indirectly affect interstate commerce, to any greater extent than do the provisions which require persons engaged in the business at designated places to procure permits to maintain such places. Regulation of the retail traffic, when conducted by a traveling salesman, is certainly not less necessary or desirable than when it is carried on by saloon keepers, who are constantly subject to the observation of the general public and the inspection of city and town officers. If the latter method of making sales is to be regulated, the former should be to the full extent of the state's police power. It is a universally accepted rule, frequently recognized by this court, that no legislative act should be declared unconstitutional unless the conflict between its provisions and some principles of constitutional law is so plain and palpable as to leave no reasonable doubt of its invalidity. Such a conflict certainly has not been shown in this case. On the contrary, the reasons for concluding that the statute, correctly construed, does not contravene the interstate commerce clause of the federal Constitution, are clear and convincing.

Does it appear that the defendant violated the law? The Legislature did not intend to regulate the business of selling or offering for sale of intoxicating liquors in other states. A license is required only where the business is done in this state. Does it appear from the conceded facts that Metzger & Co. were engaged in the business of selling or offering to sell intoxicating liquors in this state without having procured the required license, and was the defendant acting as their employe in conducting such business? They were engaged in the business of selling and offering to sell intoxicants without a license, and defendant was their employe. So much is cer-

tain. Was the business conducted in this state or in Minnesota? Were they selling or offering to sell here or there? If here, defendant violated the law. If there, he was not guilty of the crime charged. "Sale is a contract by which, for a pecuniary consideration, called a price, one transfers to another an interest in property." Rev. Civ. Code, § 1299. The defendant was not authorized to make sales here or elsewhere. The orders or offers obtained by him were subject to the approval of Metzger & Co. No contract was made, the minds of the parties did not meet, until the offers were received and accepted at St. Paul. It was expressly agreed that the goods should be delivered at that place. Title to the property was there transferred. Under these circumstances it seems clear that the sales took place in Minnesota, and not in this state. Shuenfeldt v. Junkermann (C. C.) 20 Fed. 357; Williams v. Feiniman, 14 Kan. 288; Frank v. Hoey, 128 Mass. 263; Kling v. Fries, 33 Mich. 275. If, as has been shown, persons residing in this state may purchase intoxicants in another, and receive them in this for their own use, regardless of the laws of this state, they certainly have the right to order intoxicants by mail or through the soliciting agent of a nonresident dealer. In this case the nonresident dealers appear to have merely solicited persons to purchase goods at their place of business in another state, something the Legislature did not attempt to regulate, unless it be assumed that the lawmaking power intended to enact an unconstitutional statute, and, of course, such an assumption cannot be tolerated. So I conclude that the law under which the defendant was convicted is valid, but that it does not appear that he violated such law. For this reason alone I think the judgment of the circuit court should be reversed, and a new trial ordered.

CORSON, P. J. I fully concur in the views expressed by Mr. Justice HANEY as to the constitutionality of the license law of this state, but I am unable to concur in his conclusion that the defendant is not guilty of the offense charged, and the judgment of the trial court therefore should be reversed. In my judgment, when the conclusion was reached that the law is constitutional, it logically followed that the judgment of the court below was correct, and

should be affirmed, as the defendant was clearly doing business in violation of the law of this state without having first paid the license required by law. Section 2834, Rev. Pol. Code, relating to the sale of intoxicating liquors, provides : "In all townships, precincts, towns and cities of the state, there shall be annually paid the following license, * * * upon the business of selling or offering for sale any spirituous vinous, malt, brewed or fermented or other intoxicating liquors· at retail, * * * $400.00 per annum; upon the business of selling or offering for sale any of the above mentioned liquors at retail by any traveling salesman who solicits orders by the jug or bottle in lots of less than five gallons, $200.00 per annum." Section 2836 provides : "Every person engaged or intending to engage in any business mentioned in section 2834, and requiring the payment of any license mentioned in such section, shall * * *pay to the county treasurer in advance the license required by section 2834 for such business for a year commencing on the 1st day of July and ending on the 30th day of June next thereafter." Section 2838 provides : "If any person or persons shall engage or be engaged in any business requiring the payment of license under section 2834, without having paid in full the license required by this article, * * * shall be punished by a fine of not less than $50, nor more than $500.00 and costs of prosecution, or by imprisonment in the county jail not less than ten days nor more than 30 days or by both such fine and imprisonment in the discretion of the court." It will be observed by the statement of facts in this case that the defendant was a traveling salesman employed by Lewis L. Metzger & Co., and that on the 10th day of February, 1904, he was engaged as such traveling · salesman in soliciting orders for said company for the sale of intoxicating liquors in quantities less than five gallons from citizens and residents of and within the county of Potter, and that he had not paid any license nor procured any permit to sell the same as required by the provisions of section 2834. The question is asked by Mr. Justice HANEY in his opinion, "Does it appear that the defendant violated the law?" In my judgment, that question can be answered in the affirmative. It appears from the statement of facts that the defendant was doing precisely what he was prohibited from

doing without paying a license and obtaining a permit therefor. Great stress is placed upon the fact that the firm for which the defendant was soliciting orders was required to pass upon the orders, and, if accepted, the intoxicating liquors were delivered to a transportation company in St. Paul, and that that constituted a delivery to the parties who had given the orders outside of this state, and that for this reason the defendant had not violated any of the provisions of the law of this state. This construction of the law, it seems to me, is entirely unwarranted by the language of its provisions, the evident intention of the lawmaking power, and in conflict with decisions of the courts passing upon similar questions. When, as it appears by the statement of facts, the defendant was engaged in the business of offering for sale and soliciting orders for intoxicating liquors without the payment of the license fee and obtaining a permit to engage in such business, he was engaged in a business prohibited by the lawmaking power. In the view I take of the case, it is immaterial as to whether the transaction is to be regarded as a sale of liquor or offering it for sale, or soliciting orders for the purchase of the same, as the doing of either act constitutes a violation of the provisions of the statute. Soliciting orders for the purchase of liquor constituted a part of the transaction in the sale of the same, and this was the view taken by the Circuit Court of the United States for the District of New Hampshire in Lang et al. v. Lynch, reported in 38 Fed. 489, 4 L. R. A. 831, in which that court held: "Orders taken for the sale and delivery of liquors in violation of the law of the state are a part of the contract of sale, and as such render the entire transaction void, and no recovery thereon can be had." The learned Circuit Judge in his opinion says: "I am of opinion, therefore, that the taking of the order by the agent of the plaintiffs was a part of the contract of sale so far as to forbid a right of recovery upon the contract, and that the statute of New Hampshire inflicting a penalty for the offense prohibits the right of recovery for the price of liquors sold." It is true this was an action to recover the value of the liquors sold and delivered in another state, but the court seems to take the view—and I think

very properly—that taking an order by the agent was a part of the contract of sale. In this case it is not necessary to go so far as that court went, as our statute provides a penalty for offering for sale or for soliciting orders for the purchase of liquors. The case of State v. Ascher, 54 Con. 299, 7 Atl. 822, is directly in point as to the offering for sale or soliciting orders. In that case that learned court held that the act of the state of Connecticut of 1882 forbids all persons without a license therefor to sell intoxicating liquors by sample, or by soliciting or procuring orders, and held that a contract for sale made in the state of Connecticut by a traveling agent of a firm in another state of liquors to be delivered in such other state, is a violation of the statute. It appears in the statement of facts in that case, as in this, that a traveling salesman representing a firm of the city of New York was engaged in the state of Connecticut in soliciting orders for intoxicating liquors for his firm; that such orders were transmitted to the firm in New York City, and, if approved by the firm, the liquors ordered were delivered to a carrier in New York City for the party ordering the same. The court in the case in its opinion says: "The defendant was convicted, and appealed to this court. His grievance is that he was convicted of an unlawful sale, while, as he contends, he effected no sale within the meaning of the statute in this state. He says that he only solicited and obtained an order in this state, and that the sale was completed by a delivery of the liquors by his employers to the purchaser in the state of New York. The statute of 1882, c. 107, pt. 6, § 1 (Acts 1882, p. 185), provides that 'any person, who, without a license therefor, shall, by sample, by soliciting or procuring orders, or otherwise, sell any spirituous and intoxicating liquors, shall be fined for the first offense not more than fifty dollars,' etc. * * * The question is, what did the Legislature mean by selling by sample, or by soliciting or procuring orders? A majority of the court think that it intended to prohibit just such a sale as was made in this case. If the statute is to be so construed as to limit its operation to sales completed by delivery in this state, of course a vast majority of sales by soliciting orders will not be embraced in the statute. We think that the Legislature, taking notice of the fact

that wholesale dealers in New York and elsewhere out of the state generally sell their wares through agents going from place to place soliciting and procuring orders, intended to prohibit such sales; otherwise the facilities for making such sales are so great, extending to every town and hamlet in the state, that the efficiency of the license law would be materially impaired. Dealers in neighboring states, without license and without restriction could sell and cause to be delivered in any and all parts of the state liquors to any extent. Hence the Legislature was careful to guard against such a result by prohibiting, as it does in the eleventh section, all sales without a license and all sales in a no-license town." And the court, in concluding its opinion, says: "The claim that the Legislature intended only such sales as should be consummated by a delivery in this state cannot be allowed. It is a matter of common knowledge that sales effected by drummers are usually, if not always, consummated by a delivery at the vendor's place of business to a common carrier; and while such delivery, for all civil purposes, completes the sale made by the drummer, vests the title in the purchaser, and gives the seller a right to the purchase money, yet for all police purposes it is competent for the Legislature to say that the acts done by the drummers shall of themselves constitute a sale, and therefore an offense. And we think the Legislature intended so to say, and to make all such acts an offense, whether the delivery was in or out of the state. By doing so the word 'sell' is used in the same sense in which it is generally used by business men in relation to this subject-matter. In common language a drummer sells goods. He sells by sample. He sells by soliciting and procuring orders. The dealers sell by drummers as their agents. Now, if the statute does not reach all such cases, then it falls short of reaching the evil aimed at, and the intended remedy is a failure." That court, in its opinion, evidently disregarded the claim made by the defendant that the orders taken by him were required to be passed upon and accepted by the firm in New York city before a sale could be made, and the claim that the interstate commerce law was violated, as unworthy of notice, as it does not refer to them in the majority opinion. It will be observed that the provisions of the statute in this state are

broader and more comprehensive than the provisions of the statute of Connecticut and that they include not only the sale of intoxicating liquors, but the offering for sale and soliciting of orders.

Mr. Justice HANEY places reliance upon the case of Distilling Co. v. Nutt, 34 Kan. 724, 10 Pac. 163, but that was a civil action for the recovery of the value of a barrel of whisky delivered at Kansas City, in Missouri. In the later case of Westheimer v. Weisman, 60 Kan. 753, 57 Pac. 969, which was also an action to recover the value of certain liquor sold, the court, in its opinion, says: "The penalty of section 32, above quoted, is inflicted upon the very person who takes or receives an order from any person in this state not authorized to sell liquor, and hence the agent receiving an order for whisky here would be amenable to the penalties of the law." And again, in the same opinion, the court says: "The agent made no sale, and could only be liable under the statute for the taking of an order for intoxicating liquor. The statute, operating only on the agent, cannot prejudice the rights of Westheimer & Sons, who made the sale in another state. The agent did no more than make an offer of sale subject to the approval of his house. The final acceptance of the order and consummation of the sale occurred in Missouri, where such sales were lawful. Being lawful there, a recovery of the price of the whisky can be had in our courts." It will thus be seen that that court recognizes the fact that, while the sale of liquor may have been consummated in another state, the agent who procured the order was nevertheless liable to the penalty imposed for a violation of the statute. Clearly, the defendant in the case at bar was engaged in the business in Potter county, not only of selling, but offering for sale, and soliciting orders for the sale of, intoxicating liquors. The claim that the defendant had not committed the offense under the statute because the order had to be approved in St. Paul, and that the delivery was made there to the purchaser, and not in South Dakota, is clearly untenable. Such a construction is entirely unwarranted by the law itself or by the evident intention of the lawmaking power. In my judgment, it is entirely immaterial whether the liquors were delivered in this state or delivered at all. The offense was complete under the statute when the defendant solicited the order or offered the liquors for sale.

It seems to me that the construction given to our statute is altogether too narrow and technical, and one entirely unwarranted either by the language of the statute, or by the clear intention of the Legislature in passing the act; and that the interstate commerce law is not in any manner involved in this case. The lawmaking power, in adopting the license system for this state, sought, as far as possible, to minimize the evils of intemperance, and prevent the miseries resulting from the use of intoxicating liquors, by requiring all parties engaged in the business, before so doing, to pay a license, and obtain a permit therefor; and this policy is clearly carried out in the provisions of the statute. The legislature not only prohibited the sale of intoxicating liquors, but the offering for sale, or the soliciting of orders for the purchase of, the same by any person, unless he had paid such license and procured the permit. We may assume that the Legislature knew all or nearly all traveling salesmen take orders subject to the approval of the houses represented by them, and that the delivery of the goods sold is usually made in other states. If our Legislature simply meant to prohibit the offering for sale or soliciting of orders in cases where the goods were actually delivered by the agent in this state, it failed to accomplish anything beneficial by the enactment of the law, as, of course, it was known to them, as it is known to us, that few, if any, such sales would be made by agents in this state, but there would be, as in the case at bar, the form of submitting the order to the firm outside of the state, and that such firm would accept the order and deliver the liquors outside of our state. I understand that the power of the Legislature to require the payment of such license before engaging in the business in this state of soliciting orders or offering for sale intoxicating liquors will be affirmed by the undivided court in holding the law constitutional.

In my opinion, the judgment of the court below should be affirmed.

FULLER, J. As self-preservation is a law of nature predominant in every organized community, the inherent right to guard against the introduction and traffic in commodities which endanger

the health and corrupt the morals of our citizens was never surrendered to the general government, and the statute confessedly violated by the accused in no manner interferes with any of the laws of the United States. From the opinion of Chief Justice Taney in the License Cases, 5 How. 504, 12 L. Ed. 256, I quote as follows: "These laws may, indeed, discourage imports, and diminish the price which ardent spirits would otherwise bring. But although a state is bound to receive and permit the sale by the importer of any article of merchandise which Congress authorizes to be imported, it is not bound to furnish a market for it, nor abstain from the passage of any law which it may deem necessary or advisable to guard the health or morals of its citizens, although such law may discourage importation, or diminish the profits of the importer, or lessen the revenue of the general government. And if any state deems the retail and internal traffic in ardent spirits injurious to its citizens, and calculated to produce idleness, vice, or debauchery, I see nothing in the Constitution of the United States to prevent it from regulating and restraining the traffic, or from prohibiting it altogether, if it thinks proper." Assuming that our police system of regulating the liquor traffic by means of high license has a tendency to diminish interstate shipments, that result would constitute no infringement of the constitutional guaranty of commercial freedom among the states. Independently of any question of citizenship, and without the slightest discrimination, the solicitor of orders, as a person engaged in the business of offering intoxicating liquors for sale, must pay the license, or suffer the penalty provided by the statute; but no penalty, restriction, or burden is imposed upon a non-resident engaged in interstate commerce.

· As to the validity of the law under consideration, I concur ,with both my associates, and, with Presiding Judge CORSON, agree in the conclusion that plaintiff in error was lawfully convicted. Consequently, the determination of all questions of law and fact at the trial below is sustained by the majority of this court, and the judgment of conviction is therefore affirmed.