# Moog *v.* The State.

## Soliciting Orders for Sale of Liquors in Prohibited Territory.

[DECIDED MAY 9, 1906, 41 So. REP. 167.]

1. *Commerce; Regulation; Intoxicating Liquors; Wilson Act; Application.*—Where a traveling salesman takes orders for the sale of liquors to be transported into the state from another state, prior to the completion of the transportation, the Act of Congress of Aug. 8th, 1890, C. 728, 26 Stat. 313 (U. S. Comp. Statutes 1901, p. 3177) has no application to any part of the transaction.

2. *Same; State Laws; Interstate Commerce; Regulations.*—In so far as § 5087, Code 1896, purports to apply to residents of other states soliciting orders, in prohibited territory, for liquors to be transported from another state into this state, it is in violation of the commerce clause of the Federal constitution.

APPEAL from Monroe Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

The indictment in this case charges that Herbert Moog within the limits of a district, in which the sale of spirituous, vinous, or malt liquors was prohibited by law, did solicit an order from Luke Sawyer for spirituous, vinous, or malt liquors to be shipped or sent into such district. The defendant demurred to the indictment (1) because it does not appear from said indictment that the defendant is a citizen of the State of Alabama, or that he solicited or received said orders to be sent to any whisky dealer or any person located in the State of Alabama; (2) because the statute under which this indictment is framed is in violation of the commerce clause of the constitution of the United States, in this; that it fails to exempt from its operation non-residents of the State of Alabama, traveling and soliciting orders for such liquors for dealers who are nonresidents, and whose only place of business is outside of the State of Alabama; (3) because the statute under which this indictment is found

is void, inoperative, and unconstitutional as against this defendant, because the said defendant was, at the time of the alleged offense, a nonresident of the State of Alabama, traveling and soliciting orders for liquors for A. Moog, a lawfully licensed whiskey dealer, whose only place of business was, at the time of the alleged offense, in the city of Pensacola, State of Florida.

These demurrers were overruled, whereupon the defendant filed the following plea: "Now comes the defendant, Hubert Moog, who is indicted as Herbert Moog, and, for the purpose of this trial only, waives all defects as to his correct name, and in this case waives his right to any plea of misnomer, and waiving no other right, for amended plea to this indictment filed, by leave of the court says: That he is indicted under section 5087, of the Code of 1896 of Alabama, which provides that any person who, within the limits of any district in which the sale of spirituous, vinous, or malt liquors is prohibited by law, solicits or receives any order for spirituous, vinous, or malt liquors in any quantity, to be shipped or sent into any such district, must, on conviction, be fined. That said defendant is a citizen and resident of the State of Florida, his place of residence being Pensacola, Escambia county, Florida. That his occupation is that of a commercial traveler, commonly called a drummer. That his residence and occupation at the time of the finding of the indictment, on the 22nd day of July, 1905, and for more than two years immediately previous thereto, was as above set forth. That he was not on said date, nor at any time within two years immediately previous thereto, a citizen of the State of Alabama, nor was he on said date or at any time within two years previous thereto, in the employ of or drumming or soliciting for any house, person, firm, or corporation located or doing business in the State of Alabama. That on said date, and for more than two years immediately previous thereto, he was a traveling salesman or drummer for Alfred Moog, a wholesale and retail dealer in liquor and was engaged in no other business. That he was employed by said Moog during all of said period, receiving a salary from said Moog for his services. That the said A. Moog on

said date, and for more than two years immediately previous thereto, was engaged in the business of a wholesale and retail dealer in spirituous, vinous, and malt liquors in Escambia county, Florida, but was not engaged in said business in any other state or county. That the said A. Moog at said time and during said period was a lawful licensed dealer in such liquors in said State of Florida, and Escambia county, having complied with all laws of said state which were a prerequisite to his engaging in said business. That the defendant came from the city of Pensacola, Escambia county, State of Florida, at the direction of said A. Moog, into the county of Monroe, state of Alabama ,and within 12 months prior to the finding of this indictment, then and there within said time solicited and received from one Luke Sawyer, in the county of Monroe and State of Alabama, an order for spirituous liquors, to wit, whisky. That said order was solicited and received by the said defendant in Monroe county, Alabama, and was by him in due course of mail transmitted to A. Moog, in the city of Pensacola, State of Florida, for his acceptance or rejection. That said defendant did not deliver or attempt to deliver the said liquor, or any spirituous, vinous, or malt liquors in said county of Monroe, but only solicited and accepted the order therefor in the said county, and transmitted same to A. Moog, in Pensacola, Fla., for his acceptance or rejection. That at the time of the acceptance of the said order from the said Luke Sawyer for the said liquor the said defendant did not demand, accept, or receive any money or other thing of value in payment of, for, or on said liquor. The defendant further avers that the said order which he solicited and received was for whiskey for the lawful use and consumption of one Luke Sawyer. That defendant, being a nonresident of the State of Alabama at that time, and traveling for a nonresident dealer, at said time as aforesaid, was by virtue thereof exempt from the provisions of the said statute. And that the said statute, in so far as it relates to this defendant, he being a nonresident and traveling and soliciting for a nonresident dealer in such liquor, was and is in violation of the commerce clause of the Constitution of the

United States, and therefore unconstitutional and void in its operation as to this defendant. Wherefore this defendant says he is entitled to his discharge." Said plea was duly verified by affidavit.

The state demurred to the plea (1) because said plea avers no ground sufficient in law to abate said indictment or avoid the same; (2) because said plea admits on its face that said defendant did within the limits of Monroe county, Alabama, a district in which the sale of spirituous liquors is prohibited by law, solicit or receive an order from one Luke Sawyer, the party named in the indictment for spirituous, vinous, or malt liquors to be shipped into said district, and alleges no fact to show that the statute under which said indictment was found was and is in violation of the commerce clause of the Constitution of the United States; (3) said plea is not sufficient answer to said indictment.

The court sustained this demurrer, and the case was tried on a plea of not guilty, and upon an agreed statement of facts in all respects like the matters and facts as set out in defendant's special plea above. Whereupon the court gave the affirmative charge for the state.

J.. WALKER KEHOE and McCORVEY & HARE, for appellant.—The first contention that we make is that liquors of the character mentioned in the statute are legitimate subjects of commerce, and in support of contention we cite the following authorities:—Judson on Interstate Com. (1905) Sec. 9, p. 16-17; Donald v. Scatt, 67 Fed. p. 854; Pierce v. State, 5 How. p. 554; Leisy v. Harden, 135 U. S. p. 116; 34 L-Ed. p. 128; Crutcher v. State, 141 U. S. p. 47; 35 L-Ed. p. 645; Lyng & Michigan, 135 U. S. p. 161; 34 L-Ed. 150; Vance v. Vandercock, 170 U. S. p. 438; 42 L-Ed. 110; In. re. Rehrer, 140 U. S. p. 545; 35 L-Ed. 572.

Our second contention is that liquors of the character mentioned being the legitimate subject of commerce, that any law which attempts to tax, restrain, burden or prohibit the traffic in such liquors between parties residing in different states is in violation of the commerce clause of the Constitution of the United States of Amer-

ica, and void,—and in support of this proposition we cite:—*Stoneberger v. Hammick*, 129 U. S. p. 141; 32 L-Ed. 637; *McCall v. California*, 136 U. S. p. 104; 34 L-Ed. 391; *Brennan v. The City of Titusville*, 153 U. S. p. 829; 38 L-Ed. 719; *Robbins v. Tax District*, 120 U. S. p. 7; 30 L-Ed. 695; *In. re. Bernie*, 42 Fed. p. 545; *Strickland v. Morgan*, 185 U. S. p. 26; 46 L-Ed. 785; *Carson v. Maryland*, 120 U. S. p. 502; 30 L-Ed. p. 699; *Louisiana v. Lagrade*, 60 Fed. p. 186; *State Ex. Rel. Selliger v. O'Conner*, 5 S. D. 629; 67 N. W. p. 824; *McClelland v. Marietta*, 92 Ga. p. 749; 22 S. E. p. 329; *Martin v. Randall*, 130 Ind. p. 109; 26 N. E. p. 410; *Richardson v. State*, (Miss.) 11 So. Rep. p. 934; *Clemmons v. Cooper*, 4 Wyo. p. 494; 35 Pac. p. 472; *In. re. Mitchell*, 62 Fed. 576; *State v. Rankin*, 11 S. D. 444; 76 N. W. 299; *Exparte Hough*, 69 Fed. 330; 5 Inters. Com. Rep. 327; *Turner v. State*, (Tex. Crim. App.) 55 S. W. 835; *State v. Scott*, 98 Tenn. 254; 36 L. R. A. 461; 39 S. W. 1; *Exparte Holman*, 36 Tex. Crim. Rep. 255; 36 S. W. 441; *State v. Lichtenstein*, 44 W. Va. 99; 28 S. E. 753; *In. re. Lebolt*, 77 Fed. 587; *Stafford v. Montgomery*, 110 Ala. 619; 20 So. 127 .

Another contention that we make is that by the word *Commerce* as used in the Federal Constitution is meant all those things which directly or indirectly, necessarily tend to promote and facilitate trade between citizens of different states, and includes traffic, solicitation, drumming, advertising and unrestrained intercourse; the authorities above cited sustain this contention, and we cite also on this point:—Blacks Law Dictionary (Commerce) 225; Judson on Interstate Commerce Sec. 6, p. 10; *Crutcher v. Ky. supra.*

It may be contended by the defendant in error, that since the enactment of the act of Congress, August 8th, 1890, commonly, and hereafter herein referred to as the "Wilson Bill," that the State in the lawful exercise of its police power, has the right to enact and enforce a statute of the character of the one under which this prosecution is brought.

We take it that it is a well settled proposition of law, that the police powers of a State cannot attach to, or ef-

fect inter-state commerce, this proposition of law is well established in *Leisy v. Harden, supra,* (a liquor case). This case was considered and decided before the enactment of the Wilson Bill, the court here held, that notwithstanding the State law of Iowa, prohibited the sale of liquors including beer, still that a citizen of Illinois could lawfully ship such liquor into the State of Iowa, and there sell it in the original package; that it was protected by inter-state commerce, and exempt from police power regulations of the State of Iowa, until it became commingled with the general mass of property of the State; that it was not a part of the general mass of property of the State so long as it remain in the original package.

There was some difference of opinion at first, as to what "upon arrival" meant, some of the courts holding that arrival meant when they crossed the State line, but this term "upon arrival" has been construed by the Supreme Court of the United States of America to mean, that the police laws might attach, after the liquors had reached the end of the shipment and had been delivered to the consignee. See—*In. re. Bergen,* 115 Fed. Rep. 339; *Rhodes v. Iowa,* 170 U. S. 412; L-Ed. 1088; *Emert v. State,* 156 U. S. 319; 39 L-Ed. 430; *In. re. Reher, supra;* Judson on Interstate Comm. Sec. 17, p. 27; Judson on Interstate Comm. Sec. 52, p. 71.

The Wilson Bill analyzed and the foregoing authorities applied, we find that the law now is exactly as it was in *Leisy v. Hardin, supra,* with this single exception, that now under the Wilson Bill a State may apply its police power at an earlier period,—How much earlier? When the drummer comes into the State and solicits? No—When the liquor comes across the State line? No—When it arrives at the depot or warehouse of the common carrier at the end of the shipment? No—Then when? When it reaches the end of the shipment and is by the common carrier delivered to the consignee or his order; then and not till then can the State police law attach.

A liquor drummer or solicitor, drumming or soliciting orders for a non-resident dealer is engaged in interstate commerce, as much now as he was before the pas-

sage of the "Wilson Bill,"—the act, did not attempt to legislate with reference to the solicitor, the agency, but only with reference to the thing, the liquor itself, and only with it to the extent of making it, the liquor, (not the drummer, the agency) subject to the police laws of the State at an earlier period, i. e., immediately upon the arrival at the end of the shipment and delivery to the consignee.

The right of a State to license is denied because it is a burden and a regulation of commerce, and effects, and to some extent hampers inter-state commerce, but a statute like the one under which this prosecution is brought, is even more, for it prohibits absolutely—it not only effects or impedes inter-state commerce between the States, but causes a complete cessation of this particular phase of traffic in inter-state commerce.

All the late decisions of the Supreme Court, of the several States, have decided in accordance with the recognized rulings of the federal court—for authorities on this point see—*Robbins v. Taxing District, supra; Carson v. Maryland, supra; Asher v. Texas,* 128 U. S. 129; 32 L-Ed. 368; *Exparte Loeb,* 72 Fed. 657; *Exparte Bergen,* 115 Fed. 339; *Duke v. Moses,* (N. H.) 23 Atl. 793; *State v. Hickox* (Kas.) 68 Pac. 35; *State v. Lichtenstein,* (W. Va.) 28 S. E. 753; *State v. Hanaphy,* (Iowa) 90, N. W. 601.

Again, it may be contended as an excuse or justification for said statute that Congress has kept silent upon this particular question, and that for that reason, in the absence of any positive restriction having been laid by Congress, that the State has the authority to pass such an act as the prosecution in this case is brought under. This however, is not the case, the State can have no such authority by implication. The law writers say that the fact that Congress has taken no action would be construed to mean that Congress did not intend that it should be burdened at all, citing, *Robbins v. Taxing District, supra,* and cases cited—*Brennan v. Titusville, supra; Crutcher v. Ky., supra.*

MASSEY WILSON, Attorney-General for State.—The appellant was indicted under section 5087 of the criminal

[Moog v. The State.]

code, on the charge of soliciting an order from one Sawyer in a prohibition district for spirituous, vinous, or malt liquors, to be shipped or sent into such district. The defendant filed a special plea to the indictment, to which the court sustained a demurrer, and the case was then submitted to the jury upon an agreed statement of facts, and the defendant was found guilty and fined twenty dollars.

The plea set up in substance that the appellant, a citizen of Florida and a commercial traveler in the employ of one Moog, also a citizen of Florida, solicited the order in question in Monroe county, a prohibition district, within twelve months before the finding of the indictment; that the order so solicited and received was forwarded to said Moog in the State of Florida for acceptance or rejection; that the appellant did not deliver or attempt to deliver the said liquor, nor did he demand or accept or receive any money therefor, and that the liquor to be shipped to said Sawyer was for his lawful use and consumption, and that the statute in so far as it related to this appellant was and is in violation of the commerce clause of the Constitution of the United States. The State demurred to the plea and the demurrer was sustained.

Prior to the act of August 8th, 1890, hereafter referred to as the Wilson Act, (26 Stat. L. 313, 3 Fed. Stat. Anno. 853) the contention of the appellant would have been of merit. The Statute is as follows:

"That all fermented, distilled, or other intoxicating liquors or liquids transported into any State or Territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or territory be subject to the operation and effect of the laws of such State or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

I shall first endeavor to show that the demurrer to the plea was properly sustained under the law as declared and recognized by the Supreme Court of Alabama.

[Moog v. The State.]

In Tinker v. State, 90 Ala. 638, the appellant was indicted for selling spirituous or vinous liquors without license. He was tried on agreed facts and it appears that the liquor so sold constituted an original package which had been shipped from Tennessee to the defendant in Jackson county; and that it was received and sold by the defendant in the original package as the agent of the owner and that neither had any license to sell liquors in the county of Jackson.

"It may be conceded," said Judge McClellan, "that the act charged and for which conviction was had, was an act of interstate commerce within the principles declared in the original package cases, * * * But that fact will not avail the defendant. On August 8th, 1890; thirteen days prior to the sale proved in this case Congress passed an act "to limit the effect of the regulations of commerce between the several States and with foreign countries in certain cases," which is there set out. Judge McClellan then discussed the subject whether the effect of the Wilson law was to subject liquors in original packages to existing State police regulations or merely to open the way to future regulations on the part of the State, and concludes as follows: "Our view is that the existing laws of Alabama in regulation or prohibition of the liquor traffic were intended to reach, apply to and prevent, or regulate all sales of certain liquors within the territory to which the statutes are applicable, whether the liquor was produced in the State or had been brought into the State and lost its character as a subject matter of commerce by being taken out of the original packages or had been imported or put on the market in the original packages." And further, immediately upon the passage of that law "liquors in original packages imported from other States or from foreign countries became 'subject to the operation of all the laws of this State enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in this State."

The opinion was followed in the following cases:—
*Tinker v. State,* 96 Ala. 115; *Keith v. State,* 91 Ala. 2;
*Harrison v. State,* 91 Ala. 62.

The question is next touched upon in *Bluthenthal &
Bickert v. McWhorter,* 131 Ala. 642, citing 17 A. & Eng.
Ency. of Law, p. 283.

The same case came before this court on the second
appeal and is reported in 136 Ala. 568.

If under the earlier cases this court was not committed
to the proposition for which we contend it is now under
the decision in the Bluthethal-McWhorter case. The
proposition was fairly and squarely presented and de-
cided. The appellant claimed immunity from the stat-
ute now in question by reason of the commerce clause of
the Federal Constitution. It is apparent that if the
agent in soliciting the order violated section 5087 the
principal could not recover in an action against the pur-
chaser, and it was so ruled by Judge McClellan.

This conclusion is inevitable; in no other view can the
Wilson act be given its proper effect. If it was unlaw-
ful to sell liquor in Monroe county it was likewise un-
lawful to solicit or receive an order for such liquors,
since, as Judge McClellan well said, the appellants
"rights, or want of them, is determinable by the laws
common and statute of the State."

The drummer tax cases (*Robbins v. Shelby Taxing
District,* 120 U. S. 494, 30 L. 694, and other cases in that
line) have no application here. They all arose before
passage of the Wilson law and, moreover, did not con-
cern any question relating to intoxicating liquors.

If this defendant was here indicted for soliciting an
order for any commodity mentioned in the cases cited
above there could be no conviction; and the question is
resolved to this: Is intoxicating liquor to be regarded
as a legitimate article of interstate commerce as regards
its importation into the county of Monroe? If not, the
power of the State is supreme. If a legitimate article
of commerce does the Wilson law give the State the con-
trol and authority here in question?

As regards the County of Monroe, the State of Ala-
bama has declared that liquors are not legitimate arti-

cles of commerce and their sale is prohibited. This, by force and necessary result of the prohibition law in force in that county, and by general law, the solicitation in Monroe county of an order for the sale of such liquors is prohibited.

The Supreme Court of the United States, in *Boaman v. Chicago*, 125 U. S. 515, and in *Leisy v. Harden*, 135, U. S. 116., 34 L. 128, held that the exclusive power to regulate commerce confided to Congress implies the right to determine what are the legitimate subjects of commerce, and that it is not competent for a State to determine what is an article of lawful commerce in the State nor to exclude liquors from the list of merchantable articles by its determination that they are deleterious to the morals and health of its people; both of those cases, however, arose before and, in fact, led to the passage of the Wilson law.

The Supreme Court of the United States has not, the writer believes, since the passage of the Wilson law held that under the influence of that law the State may not prohibit the importation of intoxicants.

The case of *Austin v. Tenn.*, 179 U. S. 343, 45 L. 224 throws much light on the question. Mr. Justice BROWN delivered the opinion of the court and, as usual, with great and important questions presented to that court four of the nine justices dissented. The court held that tobacco was a legitimate article of commerce, although it may to a certain extent be within the police power of the State.

As regards, intoxicating liquor,—under the Wilson law prohibitive or restrictive laws of the State have full operation and even apply to original packages. And it would seem that if the State in the exercise of its right and power determines to prohibit or restrict the sale of intoxicants, such laws should operate without any regard to the commerce clause of the Federal Constitution. If Congress should enact a law with regard to cigarettes similar to the Wilson act the original package idea would be of no force with respect to the importation of cigarettes.

There can be no distinction between the police power as respects cigarettes and intoxicating liquors.

But it might be argued that this conclusion is not supported by the previous decisions of the Supreme Court. In respect to this we quote the language of Mr. Justice BRADLEY in *Asher v. Texas,* 128 U. S. 132; 32 L. 369: "Even if it were true that the decision referred to was not in harmony with some of the previous decisions we had supposed that a later decision in conflict with prior ones had the effect to overrule them, whether mentioned and commented on or not."

SIMPSON, J.—The defendant in this case was convicted under an indictment charging that defendant "did soliciot an order * * * for spirituous, vinous or malt liquors to be shipped or sent into" a district in which the sale of such liquors was prohibited.

The case was tried upon an agreed statement of facts, which showed that the defendant, as a traveling salesman, representing a house in Pensacola, Florida, solicited and received an order from one Luke Sawyer in Monroe county, Alabama, which is a prohibition county, for whiskey for the personal use of said Sawyer; that said order was transmitted by defendant to said house in Pensacola, and no money was demanded or received by defendant.

The defense, raised in various ways, is that Sec. 5087 of the Code of 1896, in so far as it applies to a non-resident, traveling and soliciting orders for a non-resident dealer, is violative of the inter-state commerce clause of the Constitution of the United States. This clause has been the subject of a large number of decisions by the Supreme Court of the United States, and of many very able dissenting opinions. So, whatever may be our opinion upon the points raised, it is important to keep in view, simply the points decided by that able tribunal and try to conform our decisions thereto, and to avoid, as far as possible, confusing the issue by too numerous an extensive citation of authorities.

The clause in question reserves to the Congress of the United States the power "To regulate commerce with foreign nations, and among the several States and with the Indian tribes."—Const. U. S. Art, I, Sec. 8.

It was early held that this power to regulate commerce, included not only the means and manner of transportation, and the keping open of free communication between the people, but also the subjects of commerce, and it was said "since the passage of the embargo and non-intercourse laws, and the repeated judicial sanctions those statutes have received, it can scarcely, at this day be open to doubt that every subject falling within the legitimate sphere of commercial regulation may be partially or wholly excluded, * * * it may operate on any and every subject of commerce to which the legislative discretion may apply it."—*U. S. v. Marigold,* 9 How. 560, 566-7.

In the Robbins case and others which followed on the "drummer tax" question, it is decided; first, that the power of congress to regulate commerce between the states is exclusive; second, that the failure of congress to make any express regulation in regard to any subject, indicates its will that the subject shall be left free from any restrictions or impositions; third, that the fact of the right to unrestricted commerce on any subject necessarily carries with it the right of the citizen of one state, either by himself or agent, to go into the other state and solicit business. An exception was also made in favor of the police power of the state to provide for the security of the lives, health and comfort of its citizens, and, among other things mentioned, as illustrations is that of regulating or restricting the sale of articles deemed injurious to the health or morals of the community. This power is then qualified with the restriction that, in exercising this police power, no taxes can be imposed upon persons, passing through the state, nor upon property imported, so long as it is in the original package, and "no regulation can be made directly affecting inter-state commerce.".—*Robbins v. Shelby County Taxing District,* 120 U. S. 489.

As to just what is left of this exception, after applying the qualification, it is difficult to say. Possibly it leaves such matters as had been previously decided as regulating the liability for marine torts.—*Sherlock v. Alling,* 93 U. S. 99.

The original package cases held that legitimate articles of inter-state commerce, cannot be interfered with by taxation or otherwise, so long as they remain in the original package in which they were imported; and ardent spirits and tobacco are recognized among the legitimate objects of commerce.—*Austin v. Tennessee,* 179 U. S. 343 and cases cited.

In one of the Oleomargerine cases, the court reviews a number of cases, notes the fact that the court in one of the spirituous liquor cases (*Walling v. Michigan,* 116 U. S. 446, 459) placed its decision on the discrimination made, and, in answer to the suggestion that the act ("prohibiting certainu persons from soliciting the sale of intoxicating liquors) was an exerc'.se of the police power, remarked: "This would be a perfect justification of the act, if it did not discriminate against the citizens and products of other States," then draws the distinction between the case in point and the *Leisy v. Hardin,* case, and others, to the effect that there was no deception or fraud in the sale of the spirits, and finally held that the act to prohibit the sale of olemargerine, colored to look like butter, was valid even as to sales in original packages by a non-resident, because "the constitution of the United States does not secure to any one the privilege of defrauding the public." The decision winds up with the expression; "the judiciary of the United States should not strike down a legitimate enactment of a state especially if it has direct connection with the social order, the health, and the morals of its people, unless such legislation plainly and palpably violates some right granted or secured by the national convention, or encroaches upon the authority delegated to the United States for the attainment of objects of national concern."—*Plumley v. Massachusetts,* 155 U. S. 461, 470-1, 479-80.

Notwithstanding the expression referred to in the Michigan case, which might seem to indicate the contrary, we think that the other cases make it clear that the Supreme Court of the United States would hold that our statute, in question, is violative of the inter-state commerce clause, unless it is relieved by the act known

[Moog v. The State.]

as the Wilson Act, which provides that all intoxicating liquors "transported into any state, or remaining therein for use, consumption, sale or storage, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory' enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."— Act, Aug. 8, 1890, Ch. 728, 26 Sub. L. 313; 3 Fed. Statutes, Anno. p. 853.

This statute was considered by the United States Supreme Court in the Rehrer case, in which the defendant who was acting for a non-resident firm, was arrested for selling whiskey in Kansas in original packages on the day after the Wilson Act went into effect, and sued out a writ of *habeas corpus.* The circuit court discharged the petitioner, but the Supreme Court reversed the case, Chief Justice Fuller delivering the opinion, in which he recognizes the right of the state, in the exercise of its police power to prohibit the sale of spirits, restricted however by the inability of the State to interfere with the importation of articles of trade, which congress, by non-action had declared should be unmolested, and goes on to hold that the *Leisy v. Hardin* case and others, did not declare the state acts invalid, but merely limited their operation to property strictly within the jurisdiction of the state, and that the Wilson Act simply "removed the impediment to the enforcement of the State laws in respect to imported packages in their original condition,' and allowed imported property to fall at once upon arrival within the local jurisdiction.—*In re Rehrer,* 140 U. S. 545, 564.

This was followed by the Iowa case, in which the court held that the effect of the Wilson Act was to "divest them (objects of inter-state commerce shipments) of that character at an earlier period of time than would otherwise be the case," to-wit, after the object had reached its destination, it fell under the control of state legislation, so that it could not be sold even in the origi-

nal package, but before it reached the destination, it continued to be an object of interstate commerce so that the express company could not be made liable, under the state law, for moving it from its platform to its warehouse.—*Rhodes v. Iowa*, 412, 426.

There can be no doubt that there is nothing in the law to prevent a resident of Florida, by correspondence or otherwise from selling to a resident of Monroe county, Alabama, spirituous liquor, and, as held in the "Drummer" cases, that right carries with it the right to personally solicit business. The decisions of the Supreme Court of the United States, *supra*, make it clear that the Wilson act does not attach to any part of the transaction prior to the time when the transportation is completed. It results that, in so fas as section 5087, applies to residents of other states, soliciting orders for spirituous liquors to be transported from one state into the other, said section is violative of section 8 Art. I of the United States constitution. This does not affect the operation of the statute on persons within the state. We are borne out in this conclusion by *In re Bergen*, 115 Fed. Rep. 339; *State v. Hanaphy*, (Iowa) 90 N. W. Rep. 601.

The Supreme Court of Kansas seems to have taken a different view, although the point was not really necessary to the decision of the case.—*Westheimer v. Weisman*, 60 Kan. 753.

The judgment of the court is reversed and as the defendant cannot be convicted under the indictment he will be discharged.

Reversed and rendered.

WEAKLEY, C. J., TYSON and ANDERSON, JJ., concurring.