DONALD v. SCOTT et al.

(Circuit Court, D. South Carolina. May 8, 1895.)

1. CONSTITUTIONAL LAW—SUIT AGAINST A STATE.

The statute of South Carolina known as the "Dispensary Law" prohibits citizens of that state from bringing into it, for their own use, alcoholic liquors purchased in other states, and directs the seizure and confiscation of such liquors, but provides for the purchase of such liquors either in or out of the state by state officials, and for their sale by such officials. One D., a citizen of South Carolina, purchased in other states. and imported, for his own use, certain alcoholic liquors, which were seized by the state constables, acting under the dispensary law. D. filed a bill in the federal court for an injunction to restrain such constables from continuing their interference with his importation of alcoholic liquors; alleging that the dispensary law was an interference with interstate commerce, and in contravention of the acts of congress relating thereto. *Held*, that the suit was not a suit against the state.

2. UNITED STATES COURTS—JURISDICTION—FEDERAL QUESTION.

*Held*, further, that the suit involved a federal question, and was within the jurisdiction of the courts of the United States.

3. INTERSTATE COMMERCE—DISCRIMINATION—SOUTH CAROLINA DISPENSARY LAW.

*Held*, further, that so far as the dispensary law prohibited citizens of the state from purchasing alcoholic liquors, for their own use, in other states, and from importing them into South Carolina, it was a discrimination against the products of other states and the citizens of such states not patronized by the state officials of South Carolina, and was void as an interference with interstate commerce.

4. SAME—POLICE POWER.

*Held*, further, that such interference could not be justified as an exercise of the police power.

This was a suit by James Donald against J. M. Scott, M. T. Holley, Sr., R. M. Gardner, and E. C. Beach for an injunction to restrain the defendants from seizing liquors, the property of the complainant. Complainant moved for a preliminary injunction.     Granted.

Bryan & Bryan, for complainant.

Wm. A. Barber, Atty. Gen., and C. P. Townsend, Asst. Atty. Gen., for defendants.

SIMONTON, Circuit Judge.    This is a bill against the defendants, the state constables of the state of South Carolina.    The bill states: That the complainant is a citizen of the United States and of the state of South Carolina, and was the owner of certain packages of alcoholic liquor, to wit:    One barrel of Rochester beer, made in the state of New York, and shipped to him by ocean and land routes to the city of Charleston, his place of residence; one package of Pickwick Club whisky, containing six quart bottles, purchased in Baltimore, in the state of Maryland, and shipped to him by steamer and railroad to Charleston, S. C., his residence; and one case of domestic California claret, containing one dozen quart bottles, shipped to him from the place of purchase, Savannah, in the state of Georgia, to Charleston, by rail.    That these packages contained liquors for his own personal use and consumption, and not for sale in any way. That none of them contained any product of the state of South Carolina, but their contents were products of other states of the Union.    That each package was openly marked in his name.    That upon the arrival of each of the said packages at Charleston, its destination, it was forcibly seized by the defendants, claiming to act as state constables, and taken and carried away by them, under the pretense of authority of the act of the general assembly of South Carolina, approved January 2, 1895, commonly known as the "Dispensary Law."    That, before the arrival of each shipment, the complainant had given notice to the defendants of his intention to import the same for his own personal use from points without this state; and that defendants, when they made their several seizures, had knowledge of all the facts connected with the importation, shipment, and proposed use of the packages.    That upon each seizure, and after demand and refusal, he brought his action for the unlawful trespass on his rights by the defendants; and that, notwithstanding this, they persist therein, and manifestly propose to drive him to a multiplicity of suits.    That he has no adequate remedy at law for these repeated violations of his rights, as the defendants are notoriously insolvent and pecuniarily irresponsible.    He avers that so much of the dispensary law as is set up in justification of these acts of the defendants in preventing him from importing for his own use and consumption alcoholic liquors, the products of other states, into this state, violates the interstate commerce law as established by the constitution and laws of the United States, and is null and void. His bill, filed as well in his own behalf as in that of other citizens of this state in like plight with himself, prays an injunction against the defendants, forbidding them to continue their unlaw-

ful search and seizure of packages imported as these were. Upon filing the bill, a rule was issued requiring the defendants to appear and show cause why an injunction should not issue, as prayed for in the bill. The defendants have appeared, and have filed their return. After denying the jurisdiction of the court, because this suit is, in fact, one against the state, and because it presents no question arising under the constitution and laws of the United States, and because the allegations of the bill show no ground of equity jurisdiction, they answer in detail the allegations of the bill, excusing and justifying their conduct in the premises under the provisions of the dispensary law.

The arguments at the hearing on both sides have been able and exhaustive. The time at the command of the court forbids for the present any extended discussion of the important points raised and elaborately discussed. This must be reserved for a future occasion. Conclusions only can at this time be given. It is not a suit against the state of South Carolina, nor is she in any way a party thereto. Certain persons claim to act in the name of the state, basing their claim on the dispensary law. Their justification depends on the validity of that law; and if it, or that part of it which authorized them to seize and carry away the property of the complainant under the circumstances charged in the bill, be in conflict with the constitution of the United States, or any law made thereunder, it is null and void, is as if it never existed, and they are left without justification. These questions made in the bill are federal questions.

Are the acts complained of in violation of the constitution of the United States or of any law passed thereunder? This court, sitting in equity, has jurisdiction over the matters stated in the bill to prevent a multiplicity of suits, and because the complainant has no plain, adequate, or complete remedy at law.

We come, then, to the all-important question on the merits of the bill. Is the provision of the dispensary law, which forbids a citizen of the state himself to import for his own use, from the other states, alcoholic liquor, sustainable under the act of congress commonly known as the "Wilson Bill"? It is, if these provisions of the dispensary law are the lawful exercise of the police power of the state. The dispensary law nowhere declares that the use and consumption of alcoholic liquors in themselves are injurious to the morals, good health, and safety of the state, or of her people. On the contrary, the dispensary law makes the most ample provision for the purchase of alcoholic liquors in this state and elsewhere, for their distribution in convenient packages, within the reach of nearly every person throughout all portions of the state, for use and consumption by the people of the state, and in every way it encourages such use and consumption. Even in localities in which the majority of the inhabitants refuse to have a dispensary, provision is made for the procurement of alcoholic liquor by those persons within the locality who desire to use it. Alcoholic liquor is declared to be contraband, and against the morals, good health, and safety of the state, only when it is not imported by the dispenser, or is not in his hands or in the hands of some one with his permission. Alcoholic liquors

imported into this state, and declared contraband and injurious to the morals, good health, and safety of the state, and so subject to seizure, just as soon as they are seized, and passed into the hands of the dispenser, lose their injurious qualities; are put into the channels of distribution, and are sold to the people of the state for their use and consumption.

It is not necessary to go into a minute and detailed examination of all the provisions of the dispensary law, nor to determine whether all these provisions are or are not in the exercise of the police power. It is sufficient for the purposes of this case to say that in so far as the dispensary law forbids a citizen to purchase in other states, and to import into this state, alcoholic liquors for his own use and consumption, the products of other states, it discriminates against the products of other states. Such discrimination cannot be made under the guise of the police power. Walling v. People of Michigan, 116 U. S. 446, 6 Sup. Ct. 454, cited and approved in Plumley v. Massachusetts, 155 U. S. 471, 15 Sup. Ct. 154; Emert v. Missouri, 156 U. S. 296, 15 Sup. Ct. 367. And, further, in so far as this act permits the chief dispenser to purchase in other states alcoholic liquors, and to import them into this state for the purpose of selling them, for use and consumption, at retail within the state, and forbids all other persons from so purchasing and importing for their individual use and consumption, it discriminates against all other citizens of the state. It also makes a discrimination against all persons in the trade in other states who are not patronized by the state dispenser, forbidding them to seek customers within the state, and to enjoy a commercial intercourse secured to others in this state. These conclusions rest on this discrimination. If it did not exist, and if all alcoholic liquors were excluded from the state, or if all persons were forbidden to import alcoholic liquors, or if the laws of South Carolina had declared that all alcoholic liquors were of such poisonous and detrimental character, and that their use and consumption as a beverage were against the morals, good health, and safety of the state, other and different questions would arise.

Let an injunction issue as prayed for in the bill.