---

Ex parte LOEB.

(Circuit Court, D. South Carolina. March 9, 1896.)

1. INTERSTATE COMMERCE—INTOXICATING LIQUORS—POLICE POWER.
   Intoxicating liquors are a legitimate subject of commerce, and burdens upon interstate commerce therein cannot be justified under the police power of a state.

2. SAME.
   The negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce, and a state statute which attempts to prohibit the solicitation, within the state, of orders for such goods, though their sale within the state is prohibited by an exercise of the police power, is a burden upon interstate commerce, and is void.

Cothran, Wells, Ansel & Cothran, for petitioner.
Wm. A. Barber, Atty. Gen., contra.

SIMONTON, Circuit Judge. This case comes up on application for a writ of habeas corpus and the return thereto. The petitioner, a representative of a dealer in intoxicating liquors, doing business at Atlanta, in the state of Georgia, has been arrested for soliciting orders from citizens of this state on his house in Atlanta for intoxicating liquor. The petitioner avers that these orders were

v.72F.no.5—42

for liquors for the personal use and consumption of the parties ordering, and not for sale by them. The petitioner was arrested and in custody by virtue of a warrant issued by a trial justice of Greenville county, in South Carolina. The arrest is under section 41 of the dispensary act (21 St. at Large S. C. 745). The section is in these words:

"Sec. 41. That it shall be unlawful for any person to take or solicit orders, or to receive money from other persons, for the purchase or shipment of any alcoholic liquors for or to such other persons in this state, except for liquors to be purchased and shipped from the dispensary, and any person violating this section, upon conviction, shall be deemed guilty of a misdemeanor, and shall be punished by imprisonment for a term of not less than three months nor more than twelve months, or by a fine of not less than one hundred dollars nor more than five hundred dollars."

The petitioner claims that, in so far as the statute has been made to apply to the representative of a dealer in another state, soliciting orders on his house in this state, this construction makes the statute a burden on interstate commerce, and to that extent null and void.

In Cantini v. Tillman, 54 Fed. 969, decided in 1893, this court, after examination of the dispensary law of that year, held that it was not in conflict with the constitution and laws of the United States except so far as it interfered with interstate commerce, and that question was reserved.

In Donald v. Scott, 67 Fed. 854, it was held that, if the dispensary law be construed to prohibit a person in this state from purchasing liquors abroad for his own personal use and consumption, to this extent it burdens interstate commerce, and is void.

There can be no doubt that the state, under its police power, can control and regulate the liquor traffic, either by prohibiting it altogether or by permitting its sale only on certain prescribed limitations and conditions. Nor can this power be controlled by any law of the United States. The importation of liquor into this state, and its sale in this state, either to the importer or to any one else, come within this provision. And, as the state has forbidden it, such sale is illegal and void. So, even, when one imports for his own use and consumption, if the packages come C. O. D., or to order, notify, or under a bill of lading attached to a draft or in any other way by which the price is paid on or as a condition of the delivery of the goods in this state, this is unlawful, and the sale thus consummated is void. The question now is, is the solicitation of orders preliminary to such importation also void? Is it within the police power? And just here it is not enough that it was intended as the exercise of the police power. "It does not follow that everything which the legislature of a state may deem essential for the good order of society and the well-being of its citizens can be set up against the exclusive power of congress to regulate the operations of foreign and interstate commerce." Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851. It goes without saying that, if this section 41 was intended to prevent the solicitation of orders in a legitimate subject of commerce by res-

idents and citizens of other states, or to impose a penalty therefor, it is a burden on interstate commerce, as much as—indeed, more than—the imposition of a license tax would be, in proportion as the penalty is the more severe. Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592; Asher v. Texas, 128 U. S. 129, 9 Sup. Ct. 1; Stoutenburgh v. Hennick, 129 U. S. 141, 9 Sup. Ct. 256; McCall v. California, 136 U. S. 104, 10 Sup. Ct. 881; Brennan v. City of Titusville, 153 U. S. 289, 14 Sup. Ct. 829.

The question, then, is, are intoxicating liquors subjects of commerce? This is answered by Chief Justice Taney in Peirce v. State, 5 How. 554, adopted in Leisy v. Hardin, 135 U. S. 116, 10 Sup. Ct. 681, by Chief Justice Fuller:

"Spirits and distilled liquors are universally admitted to be subjects of ownership and property, and are, therefore, subjects of barter, exchange, and traffic, like any other commodity in which a right of property exists."

. Is it a legitimate subject of commerce? It is certainly so' unless the dispensary law of South Carolina has changed its character. This dispensary law itself recognizes its commercial character within this state under certain limitations. It is bought by the dispensary authorities within the state from abroad at their pleasure. It is sold freely at the multitude of dispensaries established all over the state to any one who may apply, except minors and habitual drunkards. The leading newspapers of the state contain advertisements inviting the purchase of liquors from these dispensaries. It is not sold for purposes of prime necessity, mechanical, medicinal, or sacramental, but as a beverage, the use of which is not hurtful unless abused. This same section permits the solicitation of orders from the dispensary. In the case of South Carolina v. Seymour, 153 U. S. 356, 14 Sup. Ct. 871, an appeal was taken to the supreme court from the refusal of the commissioner to register a trade-mark adopted by the state for chemically pure distilled liquors. The application of the state was verified by the oath of Governor Tillman, stating, among other things, "that the said trade-mark is used by the said state in commerce with foreign nations or Indian tribes, and particularly with Canada." And it appeared in the evidence that the trade-mark had been adopted by the state board of control, and that the state had sold in Canada a case of liquors with this trade-mark. This is a recognition of the commercial character of spirituous liquors by the highest authority in the state. Besides this, the dispensary law operates only in South Carolina. It can have no operation outside of the state. It forbids the manufacture, sale, barter, or exchange, receipt, acceptance, delivery, storing, and keeping in possession within this state of any spirituous, malt, fermented, brewed, or other liquors containing alcohol, and used as a beverage, and the transportation of it in any way within this state, excepting always such liquors purchased by or from the dispensary. The solicitation or giving of orders upon a dealer outside of the state does not come within any of this category. The nonresident dealer has the right to receive the order and to fill it, and to transport it to this state. If the order is filled abroad, and the price paid there, so that the liq-

nor becomes the property then and there of the party ordering, the transaction is perfectly legitimate; nor does it affect the legality of that transaction if the liquor is not to be paid for until it reaches its destination, provided the sale be consummated abroad. Outside of the limits of the'state of South Carolina her laws cannot be said to be violated. When it reaches its destination, then it comes within the province of the state, subject to the provisions of the police power when lawfully exercised. The transaction is perfectly legitimate up to and until the liquor is placed within the control of the authorities of the state. There is a mass of authorities bearing on this question. One from a prohibition state is quoted. In Durkee v. Moses (N. H.) 23 Atl. 793, it was held that the General Laws of New Hampshire (chapter 109, § 18), making penal the soliciting or taking orders for intoxicating liquors in the state for delivery in another state, with knowledge or reasonable cause to believe that they are to be brought within the state and sold in violation of the laws thereof, is a regulation of commerce among the states without provisions of congress, and therefore void. The Wilson act itself does not relax the interstate commerce law with regard to intoxicating liquors until their arrival within the state, thus recognizing them as an article of commerce, legitimate until operated upon after arrival by the police power. The distinction is clearly brought out in Emert v. State, 156 U. S. 319, 15 Sup. Ct. 367:

"When goods are sent from one state to another for sale, or in consequence of a sale, they become part of its general property, and amenable to its laws, provided no discrimination be made against them as goods from another state. * * * But to tax the sale of such goods, or to offer to sell them, before they are brought into the state, is a very different thing, and seems to us clearly a tax on interstate commerce itself. The negotiation of sales of goods which are in another state for the purpose of introducing them into the state in which the negotiation is made is interstate commerce."

The prisoner is in custody for exercising a right secured to him by the constitution and laws of the United States, and should be discharged. Let him go hence without day.