## In re BERGEN.

(Circuit Court, D. Kansas, First Division. May 19, 1900.)

1. INTERSTATE COMMERCE—STATE LAW REGULATING SALE OF LIQUORS—CONSTITUTIONALITY.

Sess. Laws Kan. 1885, c. 149, § 12, which makes it a criminal offense to "take or receive any order for intoxicating liquors from any person in this state, other than a person authorized to sell the same as in this act provided," as applied to a commercial traveler or agent for a liquor house having its place of business in another state, who solicits and takes orders in Kansas from persons who desire liquors for their own use, and not for sale, which orders he forwards to his principal for acceptance or rejection, is an attempted interference with interstate com-

merce, and void, as in violation of the commerce clause of the federal constitution.[1]

**2. SAME—EFFECT OF WILSON ACT.**

Act Aug. 8, 1890 (26 Stat. 313), commonly known as the "Wilson Act," goes no further than to permit the police laws of a state to be applied to liquors which have been shipped into the state as an article of interstate commerce after such liquors have reached the end of the shipment and have been delivered to the consignee.

On Petition by William Bergen for Writ of Habeas Corpus.

J. C. Rosenberger, for petitioner.

A. A. Godard, Atty. Gen., J. S. West, Asst. Atty. Gen., and E. L. Branson, Co. Atty., for respondent.

HOOK, District Judge (orally). It appears from the petition of William Bergen for the writ of habeas corpus that he is a citizen and resident of the state of Missouri; that he is in the employ of a firm dealing in intoxicating liquors at wholesale and retail, and having its sole office and place of business in Kansas City, Mo., and that the members of the firm are citizens of that state; that the firm keeps no liquors in the state of Kansas for sale or otherwise; that the petitioner, having been employed by said firm as a traveling salesman, came into the state of Kansas, and was here engaged in soliciting orders for the sale of intoxicating liquors, which orders were to be transmitted to his employers, to be accepted or rejected by them, as the case might be; that in the performance of his duties he accepted no money or other thing of value, but was acting solely as a commercial traveler, soliciting orders for transmission to his employers; that he was arrested in Franklin county, Kan., for violating a provision of a state law, to which I will hereafter refer, was tried before a justice of the peace, and was convicted, and sentenced to the county jail, where he still remains in the custody of the sheriff. He alleges that his detention is unlawful, in that the provision of the law under which he was prosecuted and convicted is, as applied to his case, violative of the commercial clause of the constitution of the United States. It is also alleged in the petition that the petitioner did not solicit orders from persons who were engaged in the unlawful selling of intoxicating liquors within the state, but only from those who desired liquors for their own consumption. A stipulation signed by the county attorney and by the attorney for the petitioner has been filed, in which it is agreed that the allegations of fact in the petition for the writ of habeas corpus shall be taken as true.

The section of the statute under which the petitioner was convicted, and which is claimed to be unconstitutional as applied to nonresident persons, firms, and corporations and their traveling salesmen, who, within this state, merely solicit orders for intoxicating liquors, is section 12 of chapter 149 of the Session Laws of Kansas of 1885. It is as follows:

[1] See Commerce, §§ 30 [a], 91 [d], 92 [f, s].

State laws interfering with interstate or foreign commerce, see note to McCanna & Fraser Co. v. Citizens' Trust & Security Co. of Philadelphia, 24 C. C. A. 13.

"Any person who shall take or receive any order for intoxicating liquors from any person in this state other than a person authorized to sell the same as in this act provided, or any person who shall, directly or indirectly, contract for the sale of any intoxicating liquors with any person in this state other than a person authorized to sell the same, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished therefor as provided in this act for selling intoxicating liquors."

A printed brief has been presented by counsel for the state in opposition to the discharge of the petitioner, in the opening sentence of which it is said that "the sole question desired to be raised and decided is as to the constitutionality of" this section of the law. A similar statement appears in the brief for the petitioner. Being thus invited and requested by both parties, it is deemed proper that the court proceed to a consideration of the question of law arising from the stipulated facts set forth in the petition. There are several propositions of law well established by the decisions of the supreme court of the United States which are decisive of the controversy in this case. One of these propositions is that any restriction or limitation imposed by state laws, whether by way of license taxes or otherwise, upon traveling salesmen coming from one state into another for the purpose of soliciting orders for the sale of any commodity which is a proper subject of interstate commerce, is a burden upon interstate commerce, and is void, in the absence of permissive legislation by congress. Another proposition is that intoxicating liquors are lawful subjects of interstate commerce. The police power of the state exercised in respect of proper subjects of interstate commerce must yield to the federal constitution. That constitution, and the laws passed in pursuance thereof, are the supreme law of the land. The right to send intoxicating liquors from one state into another pertains to and the act of sending the same is interstate commerce, the regulation whereof has been committed by the constitution of the United States to congress; and a state law which, in the absence of congressional sanction, denies such right, or substantially interferes with or hampers the same, is in contravention of the constitution. It is contended by counsel representing the state that the act of congress approved August 8, 1890, and commonly known as the "Wilson Bill" (26 Stat. 313), has established a different rule with reference to interstate trade in intoxicating liquors, and that the provisions of that act control the case at bar. In the case of Leisy v. Hardin, 135 U. S. 109, 10 Sup. Ct. 681, 34 L. Ed. 128, which probably led to the passage of this act, the supreme court held that, notwithstanding the prohibitory laws of a state forbidding and punishing the sale of intoxicating liquors therein, it was lawful not only to transport such liquors from another state, but that the importer, after their arrival in the prohibiting state, had the right to resell them in the original packages in which they had been imported; that the interstate commercial character of the shipment protected it thus far. That, undoubtedly, would be the law to-day, were it not for the act of August 8, 1890. If that act were repealed, intoxicating liquors might again be shipped into the state of Kansas, and, while contained in the original packages, be lawfully resold. The effect of the act of congress was merely to strip the protection of the original package from

the liquors upon their arrival at their destination within the state. It simply removed an impediment to the operation of the police laws of the state respecting the imported property which theretofore existed by reason of the silence of congress upon that subject. The imported liquors, upon reaching their destination, were, by the force of that act, then deemed to have become mixed with and a part of the general mass of the property of the state, and therefore subject to the same legislative regulations or prohibitions as any other like property therein. It is apparent that its effect is not so broad or comprehensive as counsel for the state claims it to be. The power of congress to regulate commerce among the several states in respect of proper subjects thereof is necessarily exclusive. The failure of congress to exercise such power in any case is equivalent to an expression of its will that the particular subject shall be free from restrictions imposed by the states. If congress but partially removes an obstacle to the attachment of state laws to a subject of interstate commerce, the operation of such laws is limited and confined to the field thus afforded. The right to resell an imported article whilst remaining in its original box, barrel, or other package is an incidental, but not a fundamental, feature of interstate commerce. The consent of congress that such incidental feature be subject to the laws of the state cannot, by mere construction, be enlarged so as to affect one that is substantial and vital, and is necessary to the very life of commercial intercourse between the several states. Commerce between the several states means more than the mere transportation of commodities. It comprises as well commercial intercourse in all of its phases. At the very foundation of interstate trade lies the right of the merchant or manufacturer to seek business in other states than that of his domicile by means of solicitation either in person or through traveling representatives. It is obvious that the act of congress referred to does not affect traveling salesmen engaged in soliciting orders as the petitioner was, but that, on the contrary, it relates solely to the status of intoxicating liquors or liquids after their arrival in the state. It is pertinent to observe in this connection that the supreme court, in construing this act of congress, has held that the liquors did not become subject to the laws of the state into which they were introduced until arrival at the point of destination and delivery to the consignee. Rhodes v. Iowa, 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088. So, if one of the orders solicited and obtained by the petitioner had been forwarded by him to his firm in Missouri, and after approval of the order the liquors desired had been shipped to the customer in Franklin county, the laws of Kansas would not have attached and become operative so far as the shipment was concerned prior to its arrival at its destination and its delivery by the carrier to the person giving the order. And the supreme court has also held that, even after such liquors reached the hands of the consignee, and became a part of the general mass of property of the state, they were exempt from seizure and destruction under state laws if the consignee did not intend to use them unlawfully. Vance v. W. A. Vandercook Co., 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1111. The case of Leisy v. Hardin, the act of congress of August 8, 1890, and a consideration of the conditions which its pass-

age was designed to remedy, clearly indicate the line of division be-tween the exemption of interstate commerce in intoxicating liquors from state restriction on the one hand and the proper field of the operation of the police laws of the state upon such commodities on the other. The conclusion is plain that the commercial clause of the constitution of the United States inhibits the application of the state law which has been quoted to a nonresident traveling salesman repre-senting citizens and residents of other states, who comes into the state of Kansas, and merely solicits orders for the sale of intoxicating liquors of those who desire them for their personal consumption, and transmits such orders to his employers beyond the boundaries of the state, to be there passed upon by them. I am familiar with the case of Westheimer v. Weisman, 60 Kan. 753, 57 Pac. 969. It is true that in that case there was presented to the supreme court of Kansas the question as to the validity of the section of the state law which has been quoted as applied to facts very similar to those of the case in hand. Although a part of the syllabus of the reported decision might possibly bear the interpretation that a different conclusion was an-nounced than that arrived at by this court, yet, when taken in connec-tion with the body of the entire opinion, I think it is clear that the judgment in that case went upon other grounds. However this may be, the case at bar is one essentially involving the interpretation and application of the constitution of the United States, and, incidentally thereto, of an act of congress. This court may not escape its duty to exercise an independent judgment upon questions of such character which necessarily arise for determination.

For the reasons which I have briefly stated, I am of the opinion that the imprisonment of the petitioner is in violation of the constitution of the United States, and that he is entitled to an order discharging him from custody.