## R. M. ROSE COMPANY v. THE STATE.

A criminal accusation charging that the defendant, who lived in Chatta-
nooga, Tennessee, solicited orders for the sale of intoxicating liquors by
a circular sent through the U. S. mails from Chattanooga to a person
living in this State, where the sale of intoxicating liquors is prohibited,
did not set forth any crime under Penal Code, § 428, and was subject
to general demurrer.

Argued February 15.—Decided October 1, 1909.

Constitutional questions; from Court of Appeals.

The Court of Appeals certifies to the Supreme Court that a
decision of the following questions, within the purview of the
constitutional amendment creating the Court of Appeals, is neces-
sary to the proper determination of the case, to wit:

1. "Is section 428 of the Penal Code of Georgia unconstitu-
tional and void as being repugnant to art. 1, sec. 8, par. 3 (Civil
Code, § 5974), of the constitution of the United States, in that
said section of the Penal Code contains a prohibition of lawful
interstate commerce and is a burden thereon; also, is said section
of the Penal Code of Georgia void, unconstitutional, and repug-
nant to the above-specified portion of the constitution of the
United States, as applied to the present case, on the alleged
ground that it undertakes to prohibit the solicitation through the
United States mails, either personally or by agent, of the sale
of spirituous, malt, or intoxicating liquors, in any county of the
State of Georgia, where the sale of such liquors is prohibited by
law, because it appears from the accusation in the above-stated
case, and from each of the counts thereof, that defendant, a Ten-
nessee corporation, engaged in business in the State of Tennessee,
in pursuance of its Tennessee business, did personally and by
agent, in the county of Fulton, a county wherein by law the sale
of spirituous, malt, and intoxicating liquor is prohibited, solicit
the sale of spirituous, malt, and intoxicating liquors; said sales to
be consummated in Chattanooga, Tennessee,—such solicitation
having been made by defendant sending to the prosecutor, Fletcher
E. Maffett, from Chattanooga, Tennessee, through the mails of
the United States a circular letter advertising such liquors for
sale, and, by the words and terms of such circular letter, soliciting
said prosecutor to purchase of said R. M. Rose Company such
liquors, one or either of them, such liquors to be purchased in

Chattanooga in the State of Tennessee, and delivered to said prosecutor at Atlanta, Fulton county, Georgia; and that said soliciting circular was sent through the United States mail and duly delivered by the postal authorities of the United States to said prosecutor in Fulton county, Georgia?

2. "Is section 428 of the Penal Code of Georgia unconstitutional and void because it contravenes art. 1, sec. 8, par. 7 (Civil Code, §5974), of the constitution of the United States, which provides that Congress shall have the power to establish post-offices and post-roads, on the alleged ground that it prohibits the solicitation of the sale of spirituous, malt, and intoxicating liquors by the mailing of circulars, and the transmission of the same by means of the United States mails from one State, and the delivery of the same by the postal authorities in another State to the sendee, incidental to the prosecution of a lawful interstate business,— the transmission and delivery through the mails of the United States of such circulars not being prohibited by the constitution and laws of the United States relative to the establishment of post-offices and post-roads, and the regulation of the postal service of the United States?

3. "Is section 428 of the Penal Code of Georgia void because it prohibits both interstate and intrastate soliciting of the sale of spirituous, malt, or intoxicating liquors in any county of Georgia where the sale of such liquors is prohibited by law, and therefore violates that provision of the United States constitution which provides that 'Congress shall have the power to regulate commerce with foreign nations and among the several States and with the Indian tribes'?

4. "Is section 428 of the Penal Code of Georgia void in that it is inconsistent with the postal laws established by the Congress of the United States, and does it contain any provision inconsistent with the right of the United States to regulate or prescribe what may or may not be transported through the United States mails?

5. "Is an accusation filed in the criminal court of Atlanta subject to general demurrer on the ground that it sets forth no offense under the law of this State, or is either count of said accusation subject to such demurrer, where said accusation is regular in form and charges the defendant (R. M. Rose Company) as follows:

'First Count: The said R. M. Rose Company (said company being a non-resident of the State of Georgia, and engaged in business in the City of Chattanooga and State of Tennessee, and not in the State of Georgia), in said Fulton county, on the first day of March, 1908, did solicit personally the sale of spirituous, malt, and intoxicating liquors—said county being a county where the sale of such liquors is prohibited by law,—by sending to deponent from Chattanooga, in the State of Tennessee, through the mails of the United States, a circular letter advertising such liquors for sale, and by the words and terms of said circular soliciting deponent to purchase of said R. M. Rose Company spirituous, malt, or intoxicating liquors, one or either of the same; the same, if purchased, to be purchased by deponent's sending to R. M. Rose Company, from Atlanta, Fulton County, Georgia, by mail, to Chattanooga, Tennessee, an order or orders for said liquors; said liquors to be shipped by said R. M. Rose Company from Chattanooga in the State of Tennessee, by express, and delivered by the express company to the deponent at Atlanta, Fulton county, Georgia. The said soliciting circular was sent through United States mail, and duly delivered by the postal authorities of the United States to deponent, in Fulton county, Georgia. All of which was contrary to the laws of said State, the good order, peace, and dignity thereof. Second Count: The said R. M. Rose Company (said company being a non-resident of the State of Georgia, and engaged in business in the City of Chattanooga and State of Tennessee, and not in the State of Georgia), in said Fulton county, on the first day of March, 1908, did solicit by agent the sale of spirituous, malt, or intoxicating liquors—said county being a county where the sale of such liquors is prohibited by law—by sending to deponent from Chattanooga in the State of Tennessee, through the mails of the United States, a circular letter advertising such liquors for sale, and by the words and terms of said circular letter soliciting deponent to purchase of said R. M. Rose Company spirituous, malt, or intoxicating liquors, one or either of the same; the same, if purchased, to be purchased by deponent's sending to R. M. Rose Company, from Atlanta, Fulton county, Georgia, by mail ' to Chattanooga, Tennessee, an order or orders for said liquors, accompanied by an United States money order for the purchase-price of said liquors; said liquors to be shipped by said R. M. Rose Company from Chattanooga in the

State of Tennessee, by express, and delivered by the express company to deponent at Atlanta, Fulton county, Georgia. The said soliciting circular was sent through the United States mail and duly delivered by the postal authorities of the United States to deponent in Fulton county, Georgia. All of which was contrary to the laws of said State, the good order, peace, and dignity thereof.' " ?

*Anderson, Felder, Rountree & Wilson* and *Rosser & Brandon,* for plaintiff in error., *C. D. Hill, solicitor-general, Lowry Arnold, solicitor,* and *D. K. Johnston,* contra.

BECK, J. In the view which we take, an answer to the last question propounded by the Court of Appeals controls the whole case. Did the criminal accusation set out an offense punishable by the laws of Georgia? The defendant, a non-resident company doing business in the State of Tennessee, sent from that State through the United States mail a circular letter to a resident of Georgia, advertising intoxicating liquors for sale in Tennessee. In this State there is a law prohibiting the sale of such liquors. The defendant was prosecuted under the Penal Code, §428, which is as follows: "If any person shall sell, or solicit, personally or by agent, the sale of spirituous, malt, or intoxicating liquors, in any county where the sale of such liquors is prohibited by law, high license or otherwise, he shall be guilty of a misdemeanor." A demurrer was interposed, which was overruled, and the defendant assigned error on this ruling.

The constitution of the United States declares that Congress shall have power to regulate commerce "among the several States." Const. U. S. art. 1, sec. 8. It has been declared by the Supreme Court of the United States that the States can not prevent the importation of lawful subjects of interstate commerce. ,17 Am. & Eng. Enc. Law (2d. ed.), 84, and cases cited; Schollenberger *v.* Pennsylvania, 171 U. S. 1 (18 Sup. Ct. 757, 43 L. ed. 49). It has also been settled by decisions of that court that intoxicating liquor is a legitimate subject of interstate commerce. Rhodes *v.* Iowa, 170 U. S. 412 (18 Sup. Ct. 664, 42 L. ed. 1088) ; 17 Am. & Eng. Enc. Law, 68, and cit.; Adams Express Co. *v.* Kentucky, 214 U. S. 222 (29 Sup. Ct. 633, 54 L. ed.). It has been said that "the negotiations in one State of sales of goods which are in another State, for the purpose of their introduction into the for-

mer State, constitute interstate commerce." 17 Am. & Eng. Enc. Law (2d. ed.), 65, and cit.; Robins v. Shelby County Taxing Dist., 120 U. S. 489, 494 (7 Sup. Ct. 592, 30 L. ed. 694); Ex parte Loeb, 72 Fed. 657; Addystone Pipe etc. Co. v. U. S., 175 U. S. 211 (20 Sup. Ct. 96, 44 L. ed. 136); Emert v. State, 156 U. S. 319 (15 Sup. Ct. 367, 39 L. ed. 430). It follows that the State into which the importation is made can not prohibit such interstate commerce—either the actual shipment or steps outside its borders essential to and which form a part of the making of the sale. A Federal judge has said: "Commerce between the several States means more than the mere transportation of commodities. It comprises as well commercial intercourse in all its phases." In re Bergen, 115 Fed. 339, 342: In American Express Company v. Iowa, 196 U. S. 133, 143 (25 Sup. Ct. 182, 49 L. ed. 417), Mr. Justice White said: "Coming to test the ruling of the court below by the settled construction of the commerce clause of the constitution, expounded in the cases just reviewed, the error of its conclusion is manifest. Those cases rested upon the broad principle of the freedom of commerce between the States and of the right of a citizen of one State to freely contract to receive merchandise from another State, and of the equal right of a citizen of a State to contract to send merchandise into another State. They rested also upon the obvious want of power of one State to destroy contracts concerning interstate commerce, valid in the States where made." This was said in a case involving the transporation of liquor sent c. o. d. in interstate commerce. In Reid v. Colorado, 187 U. S. 137, 150 (23 Sup. Ct. 92, 47 L. ed. 108), the Supreme Court said: "Certain principles are well settled by the former decisions of this court. . . Another is that a State may not, by its police regulations, whatever their object, unnecessarily burden foreign or interstate commerce. Railroad v. Husen, 95 U. S. 465, 472 [24 L. ed. 527]. Again, the acknowledged police powers of a State can not legitimately be exerted so as to defeat or impair a right secured by the national constitution, any more than to defeat or impair a statute passed by Congress in pursuance of the powers granted to it. Gibbons v. Ogden, 9 Wheat. 1, 210 [6 L. ed. 23]; Missouri, Kansas & Texas Ry. Co. v. Haber, 169 U. S. 613, 625, 626 [18 Sup. Ct. 488, 42 L. ed. 878], and authorities cited." So long as liquor is, under the Federal law,

a legitimate subject of interstate commerce, it is clear that the rulings of the highest Federal court are binding on State courts, unless changed by act of Congress or modified by that court. Courts can not legislate; nor can we overrule the decisions of the Supreme Court of the United States on Federal questions.

In Leisy *v.* Hardin, 135 U. S. 100 (10 Sup. Ct. 681, 34 L. ed. 128), commonly known as the "original-package case," that high court went so far as to hold that "A statute of a State, prohibiting the sale of any intoxicating liquors, except for pharmaceutical, medicinal, chemical, or sacramental purposes, and under a license from a county court of the State, is, as applied to a sale by the importer, and in the original packages or kegs, unbroken and unopened, of such liquors manufactured in and brought from another State, unconstitutional and void, as repugnant to the clause of the constitution granting to Congress the power to regulate commerce with foreign nations and among the several States." This not only recognized the previously established right to make a sale and shipment of liquors from one State into another, to one desiring to use them, but held that after arrival in "original packages," they were still under protection of the interstate-commerce law, and that a State could not prohibit their importation from abroad nor their sale in such packages by the importer. To meet the far-reaching effects of this decision, and to make original packages after their arrival subject to State police laws, the act of Congress of August 8, 1890 (known as the Wilson act), was passed (26 Stat. 313, U. S. Comp. St. 1901, p. 3177). Pabst Brewing Co. *v.* Crenshaw, 198 U. S. 840, 844 (25 Sup. Ct. 552, 49 L. ed. 925). It provided, "That all fermented, distilled, or other intoxicating liquors or liquids transported into any State or Territory or remaining therein for use, consumption, sale, or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." Thus, unless affected by that act, there can not be the slightest doubt that the sending of the circular letter by mail from Tennessee, advertising liquor for sale there, was not and could not be made an of-

fense under the law of Georgia.    Did that act authorize such a
negotiation in regard to, or advertisement of, interstate commerce
to be treated as a crime in this State?    It will be seen that it did
not itself render interstate commerce in liquor unlawful, nor say
that the State could exclude it; nor did it say anything as to ne-
gotiations incident or necessary to interstate sales.    It merely de-
clared that the intoxicating liquors mentioned in it should, "upon
arrival" in a State, be subject to the operation and effect of the
laws of such State enacted in the exercise of its police powers.
The question soon arose, what was the meaning of the words "upon
arrival," and therefore when did the State laws apply to imported
original packages?    The answer returned to this question by the
Supreme Court of the United States was, that "upon arrival"
meant upon delivery to the consignee.    Rhodes v. Iowa, supra;
Vance v. W. A. Vandercock Co., 170 U. S. 438 (18 Sup. Ct. 674, 42
L. ed. 1100) ; Heyman v. Southern Ry. Co., 203 U. S. 270 (27 Sup.
Ct. 104, 51 L. ed. 178).    See also In re Bergen, 115 Fed. 339; Ex
parte Jervey, 66 Fed. 961; In re Van Vliet, 43 Fed. 761 (10 L. R.
A. 451).    Under this construction, it would seem that the Wilson
act by its terms merely made such liquors subject to the State
police laws upon delivery to the consignee, and in no way affected
the right to advertise or conduct interstate commerce.    After that
act was passed, the question arose in several jurisdictions as to
whether a traveling agent could be prohibited by State law from
soliciting orders for intoxicating liquors, for acceptance and ship-
ment to be made in another State.    Prior to the decision in the
Delamater case, referred to below, it was generally held both by
State and Federal courts that a State could not make such a prohi-
bition.    In re Bergen (1900), 115 Fed. 339; Donnelly v. State,
(1905), 48 Tex. Cr. R. 567 (89 S. W. 554) ; Ex parte Loeb (1896),
72 Fed. 657; State v. Hickox (1902), 64 Kan. 650 (68 Pac. 35) ;
State v. Hanaphy (1902), 117 Iowa, 15 (90 N. W. 601) ; State v.
Lichtenstein (1897), 44 W. Va. 99 (28 S. E. 753) ; Moog v. State
(1906), 145 Ala. 75 (41 So. 166).    Unquestionably the purpose
of the Wilson act was to allow the States, as to intoxicating liquors,
when the subject of interstate commerce, to exert ampler power
than could have been exercised before its enactment.    But it did
not by its terms, or by any legitimate inference from them, author-
ize a State to prohibit interstate commerce in liquor by shipments

into its territory, or to prohibit a resident of another State from using the United States mails in connection with and as a part of such interstate commerce. The rendering of liquor subject to the police laws of a State "upon arrival" can not, save by a most strained construction, be held to authorize a State to enact a police law preventing the use of the mails by a person beyond its jurisdiction in connection with a business which, as far as it is interstate business, is not and can not be made by the State unlawful.

Later came the decision in Delamater v. South Dakota (1905), 20 S. D. 23 (8 L. R. A. (N. S.) 774, 104 N. W. 537) ; Id. (1907) 205 U. S. 93 (27 Sup. Ct. 447, 51 L. ed. 724). Let us see just what that case was. A statute of South Dakota imposed an annual license charge upon "the business of selling or offering for sale" intoxicating liquors within the State, "by any travelling salesman who solicits orders by the jug or bottle in lots less than five gallons." A violation of the statute was made a misdemeanor punishable by a fine and imprisonment or both, in the discretion of the court. Delamater, not having paid the license charge, was prosecuted. It was uncontradicted that he was in the State of South Dakota, and as a travelling salesman there solicited orders for liquor for a firm in Minnesota. All of the Judges of the State court thought the statute constitutional, but Haney, J., thought that no sale was made in South Dakota, and that the statute did not apply. He said: "The legislature did not intend to regulate the business of selling or offering for sale of intoxicating liquors in other States. License is required only where the business is done in this State." The other two Judges were of the opinion that the business contemplated and regulated by the statute was sufficiently engaged in by Delamater in the State to subject him to its laws. Fuller, J., said: "Independently of any question of citizenship, and without the slightest discrimination, the solicitor of orders, as a person engaged in the business of offering intoxicating liquors for sale, must pay the license, or suffer the penalty provided by statute; but no penalty, restriction, or burden is imposed upon a non-resident engaged in interstate commerce." The case was carried to the Supreme Court of the United States, where the judgment of the majority of the State court was affirmed. While some of the language of Mr. Justice White in delivering the opinion may be somewhat broad, the exact point decided was that the  statute

then under consideration was not void as being in conflict with the commerce clause of the constitution of the United States. The going into the State of South Dakota by Delamater, and there in person soliciting orders for liquor, was held to be such a business as was subject to the police law requiring a license. Mr. Justice White said: "We are hence called upon only to consider whether the general power of the State to control and regulate the liquor traffic and the business of dealing or soliciting proposals for the dealing in the same within the State was inoperative as to the particular dealings here in question," etc. Again, he stated that the proposition relied on was that "the State of South Dakota was without power to regulate or control the business carried on in South Dakota of soliciting proposals for the purchase of liquors, because the proposals related to liquor situated in another State" (p. 100). Finally he said (p. 104) : "It hence must be that the authority of the States who forbid agents of non-resident liquor dealers from coming within their borders to solicit contracts for the purchase of intoxicating liquors which otherwise the citizen 'would not have thought of making,' must be as complete and efficacious as such authority in relation to contracts of insurance, especially in view of the conception of public order and social well-being which it may be assumed lie at the foundation of regulations concerning the traffic in liquor." When Delamater went into the State of South Dakota and engaged in the business of soliciting, under that decision he subjected himself to its jurisdiction, and was subject to its police laws. This decision was declared to have been authorized by "the spirit" of the Wilson act. But would it be contended for a moment that, under either the letter or the spirit of that act, if Delamater had never gone into the State of South Dakota at all, but had written and posted in Minnesota a letter offering liquor for sale there, he would have been subject to the police laws of South Dakota, so as to be required by its authorities to take out a license authorizing him to write and mail letters in Minnesota? If he had not done so, could he have been indicted and extradited from Minnesota because he wrote and mailed letters there without a license from South Dakota? To ask the question is to answer it. The Delamater case is no authority for holding that one State can require a resident and citizen of another State to obtain a license to write in the latter State and send through the United States mail

letters relating to what is still held to be a subject of commerce, and therefore, between the States, of interstate commerce. In Foppiano *v.* Speed, 199 U. S. 501 (26 Sup. Ct. 138, 50 L. ed, 288), a license fee was exacted for the business of selling liquor on a boat while in the boundaries of a State.

The establishment of post-offices and regulation of the mails is a matter which has been dealt with by the Federal authorities under their constitutional powers. U. S. Const. art. 1, sec. 8; 31 Cyc. 974, 987; 22 Am. & Eng. Enc. Law (2d ed.), 1039. Subject to Federal laws and regulations, they are open to all who desire to conduct through them legitimate business transactions. As above stated, importation of liquor from one State to another can not be prohibited by the latter, and it has not been prohibited by the Federal Government. It must therefore be treated as a legitimate interstate commercial transaction. If it is so, a State can not prohibit or render penal the use of the mails between the States to effectuate and conduct it. Suppose a postmaster or mail carrier knew that a circular or advertisement of liquor in another State was in the mail, could he reject it or refuse to deliver it, on the ground that it was illegal? Surely he would commit no offense against the State law in carrying and delivering it. If the only thing done within this State was the carrying and delivering, by the postal agents, of the letter mailed in Tennessee, and if such carrying and delivering was not unlawful, and the writing and mailing in Tennessee in connection with interstate business was not unlawful, then nothing criminal was done in this State. If the sender had a legal right, in transacting interstate business, to mail in Tennessee a letter forming a part of such interstate transaction, and the postal agents had a right and were bound to carry and deliver it, how did it become a crime punishable in Georgia? To hold that a person had a right to make an interstate sale, but that the State to which the liquor was to be sent could prohibit him from using the interstate mails for the purpose, would certainly greatly curtail the right to do such business. It would be like saying that a person should have the right to do interstate business, but should use none of the usual and ordinary means of accomplishing that end. It would not be a mere incidental injury. It would operate directly upon the means of carrying on the business. If a person within the State of Georgia where the selling of liquor is an unlawful business, and where the

soliciting of sales is prohibited, had there mailed the circular letter, a different question would have been presented, which is not here involved, or passed upon.

It is sought to analogize this transaction to cases of sending poison or poisoned candy through the mails, to be consumed by another, as a means of committing murder; to sending libellous matter through the mail, which becomes a complete libel upon publication; to shooting across the line between two States and killing or seeking to kill one in a State other than that in which the person shooting is, and to apply the ruling that the crime is completed in the State where the bullet takes effect, rather than where it starts; and other similar cases. But the fundamental error in seeking to make such analogies is this: Murder, or the attempt to murder, arson, libel, forgery, and the like are crimes and nothing else. In no civilized country are they recognized as legitimate business or incidents of business. Most of the cases on the subject above mentioned dealt not with the question of whether there was any crime committed; but, assuming the commission of a crime somewhere, the question arose as to the proper venue of the trial. If an act wholly criminal in its nature is begun in one State, and perfected or consummated in another, the venue, as a general rule, is in the latter State. If a person stands in one State and feloniously shoots across a State line and kills another, the whole transaction is criminal, and its commencement in one place will not prevent the perpetrator from being subject to trial in the State where his act takes effect. But if what we have said is correct, a lawful interstate sale of liquor, by shipping from one State to another, is not a crime in the latter State, and can not be made so by it. Sending a circular letter advertising such business is not a step in consummating a crime, but a means of carrying on a business, which is not claimed to be unlawful in the State where it is located. This differs widely from the criminal cases referred to. A State can exercise its police power to the limits of its own domain, but it can not go beyond and police the citizens of other States, acting beyond its borders in the conduct of lawful business, or prevent their using the mails by posting letters or circulars in such other States in carrying on legitimate business. If this construction be not correct, then from Maine to California persons doing an interstate business, lawful where it is

done, may subject themselves to the license laws or prohibitory laws of other States by merely sending by mail advertisements into the latter. It must be remembered that we are dealing with a criminal statute, as to which the rule of strict construction applies; and we can not give it such extra-territorial force as is contended for. The decisions In re Palliser, 136 U. S. 266 (10 Sup. Ct. 1034, 34 L. ed. 514), and U. S. v. Thayer, 209 U. S. 39 (28 Sup. Ct. 246, 52 L. ed. 673), were cited and relied on by the Court of Appeals in *Rose* v. *State,* 4 *Ga. App.* 588, 599, 600 (62 S. E. 117). What has already been said applies to those cases. An illegal effort to induce a postmaster to violate the law as to selling postage stamps on a credit, or an illegal solicitation of campaign funds from a Federal officer, is not conducting legitimate interstate business or performing acts incident thereto. Moreover, general laws enacted by Congress are of force throughout the United States. The acts dealt with in those cases were criminal everywhere in the Union, and the question was as to the venue of the trial. In the consideration of the question here decided we have been compelled to reach a conclusion different from that announced by our learned and able brethren of the Court of Appeals in the case of *Rose* v. *Slate,* supra.

From what has been said it follows that the accusation set out no offense against the law of this State, and the demurrer should have been sustained. Having thus held, it is unnecessary to discuss other questions which might arise if we had held otherwise.

*All the Justices concur.*