3906.   SMALL GRAIN DISTILLING COMPANY *v.* DAVIS.

1. One can not recover the price of intoxicating liquor sold in violation of law. The act done in disobedience of the law creates no right of action which a court of justice will enforce.
2. A dealer in intoxicating liquors residing in Louisville, Kentucky, without an order, shipped by a common carrier whisky consigned to a person living in the State of Georgia. The shipment of liquor was followed by a letter from the consignor to the consignee, proposing to sell to him the liquor on credit for à specified price. The consignee, under the impression that the liquor was a gift, had taken it from the express office and used it; and, when he subsequently received the letter from the consignor, proposing to sell, he refused to buy or to pay for the whisky. *Held:* The delivery of the whisky was made to the consignee in the State of Georgia, and if there arose under the facts, any implied assumpsit on his part to pay for the whisky, the implied contract was completed in the State of Georgia, where the sale of liquor is illegal; and the seller can not recover the value .thereof.

DECIDED MAY 7, 1912.

Certiorari; from Jones superior court—Judge J. B. Park. December 1, 1911.

The undisputed facts in this case are as follows: The Small Grain Distilling Company of Louisville, Ky., without having received an order, delivered to the Southern Express Company at Louisville one case containing twelve quarts of "Four Star Whisky," consigned to Mack Davis of Wayside, Jones county, Georgia. Davis was notified by the express agent of Wayside that a package was in the office, addressed to him, and, not knowing what the package contained, he receipted for it and took it out of the express office. He opened the package and ascertained that it contained whisky. He subsequently gave away all except four quarts of the whisky. After the receipt of the whisky he received from the Small Grain Distilling Company the following letter: "Mr. Mack Davis, Wayside, Ga. Dear Sir: Hospitality is the gentle art of making folks feel good. The beverage refreshment

has always been accepted as the symbol of southern good cheer. Fine old whisky temperately used soothes and satisfies; fills the void. One of our mutual friends advises us that you are in the market for beverage refreshment, and, knowing your responsibility, we are taking the liberty of sending you, express prepaid, a case of ten-year-old Paul Jones, on open account, terms thirty days, price delivered, $14.50, though the value is more. In the event we have overstepped your wishes, kindly drop us a line, and we will have the shipment brought back, or turn over to one of our other customers in your vicinity. We hope, however, that you may find it expedient to use the shipment on invoice terms. Awaiting a reply, and thanking you in anticipation, we remain," etc. In reply Davis wrote as follows: "Small Grain Distilling Co., Louisville, Ky. Gentlemen: I am in receipt of your circular of the 23rd, enclosing bill for $14.50 for twelve quarts of 'Paul Jones Four Star.' About twelve hours before receiving your bill an express package was delivered to me, express prepaid, and, believing thoroughly in your axiom, 'hospitality is the art of making folks feel good,' I concluded that some of my good friends in Louisville had made me a present, and immediately began to put the axiom in practice among my local friends. As a result, a good part of the shipment which I supposed to be a present had been disposed of. The rest is here in my possession, but I do not feel that I have any money to spend for refreshments. If you will advise disposition, you may do so. Enclosed find your bill for $14.50." In reply to this the distilling company wrote as follows: "Mr. Mack Davis, Wayside, Ga. Dear Sir: Answering your favor of the 24th, the drinks are evidently on us, and we were perhaps over-presumptuous in sending on the goods without first obtaining your permission. Our records show that we wrote you and enclosed invoice several hours before the goods went forward, and the letter must have been delayed in transit. Will ask that you kindly return the goods, at our expense, and advise when same goes forward, so that we can be on the lookout for it." Davis did not comply with this request, retained all of the whisky, and refused to pay the distilling company for it. Whereupon the company brought a suit against Davis in a justice's court, for $14.50, the value of the whisky. Davis defended on the ground that the sale of the whisky was made in Georgia, and that

as it was contrary to the law of Georgia to sell whisky in the State, the plaintiff could not recover. The judgment was in favor of the defendant. On certiorari the superior court affirmed the judgment; and to this the plaintiff excepted.

*Johnson & Johnson,* for plaintiff in error.

*R. N. Hardaman,* contra.

HILL, C. J. (After stating the foregoing facts.)

The controlling question in the case is: Was a sale of the whisky made in the State of Georgia? If it was, the sale was illegal, and the plaintiff would have no right to recover its value. One can not recover the price of intoxicating liquor sold in violation of law. An act done in disobedience of law creates no right of action which a court of justice will enforce. Miller *v.* Ammon, 145 U. S. 421 (12 Sup. Ct. 884, 36 L. ed. 759). The general rule of law is, that a contract made in violation of a statute is void; and that when a plaintiff can not establish his cause of action without relying upon an illegal contract, he can not recover; or, as otherwise tersely expressed: "There can be no civil right where there can be no legal remedy; and there can be no legal remedy for that which is in itself illegal." This rule is so well established that any further citation of authority is deemed unnecessary. There may be some exceptions to this general rule, but the facts of the instant case do not bring it within any exception. We come directly to the question whether, under the admitted evidence, the sale was made in Georgia.

The Civil Code, § 4125, declares that "Generally, the delivery of goods is essential to the perfection of a sale. . . Until delivery is made or dispensed with, the goods are at the risk of the seller." Another general rule pertinent to the question now under consideration is that delivery to a common carrier is delivery to the consignee. *Newsome* v. *State,* 1 *Ga. App.* 793; *Falvey* v. *Richmond,* 87 *Ga.* 99; *Mann* v. *Glauber,* 96 *Ga.* 795. This proposition of law, however, is based upon the fact that the consignee gives to the consignor or shipper an order for the shipment of the goods. If Davis had ordered the whisky from the distilling company to be shipped to him by way of the express company, or by any common carrier, the delivery to the common carrier would have been in law a delivery to Davis, and the title to the whisky would have been in Davis, and the sale would have been consummated in the

State of Kentucky. Here there was no order given by Davis to the distilling company for the whisky. Davis knew nothing about the whisky until after it had reached Wayside. The seller could not, by its unauthorized act in not only selecting Davis as the consignee, but also in selecting the carrier to make the transportation, put the title of the whisky in Davis. Where the seller undertakes to deliver the goods himself at the buyer's place of business and selects his own carrier, the carrier is usually regarded as an agent of the seller, who thus assumes the risk of carriage. And so, where the sale is conditional upon payment on or before delivery, or the like, the mere delivery to the carrier before the condition precedent is performed will not ordinarily pass the title to the purchaser. 4 Elliott on Railroads, § 1414. Under the facts of this case, the distilling company not only assumed the risk of carriage, but also assumed the risk that Davis would accept and pay for the whisky. The proposed seller took the chance, probably relying upon the information which it states it had received from some of Davis's friends, that he "was in the market for beverage refreshment." Indeed, the whole conduct of the distilling company clearly shows, not a contract of sale, but a mere offer to sell, which was not accepted by Davis. The title to the whisky never got out of the distilling company. In fact no sale was consummated. It would have been consummated if Davis had paid for the whisky, and in that event the contract of sale would have been made in Georgia, where it was delivered to Davis, and would have been governed by the law of Georgia. The plaintiff can recover only on the theory that a sale was made to Davis; and the sale could not have been made, under the facts of this case, anywhere except in the State of Georgia. Now, Davis refused to pay for the whisky. He first treated the shipment as a gift from some unknown friend, and when he was informed that it was an effort to sell him the whisky, he refused to buy, but nevertheless retained the liquor. If keeping the whisky and using it after having been notified that it was not a gift, but was intended as a sale, raised an implied assumpsit on the part of Davis to pay for the whisky, the contract was completed in Georgia. Probably, from a moral standpoint, Davis should have paid for the whisky after having used it, but courts have nothing to do with such questions, but are bound by rules of law. The distilling company knew that it was a violation of law to sell

whisky in the State of Georgia, and, in thus endeavoring to evade the law of this State, the loss of both the whisky and the value thereof was only what it justly deserved. It is insisted by counsel for plaintiff in error that this shipment was protected by the interstate-commerce provision of the Federal constitution. He relies upon the case of *Rose* v. *State,* 133 *Ga.* 353. The *Rose* case is distinguishable on the facts from the present case. In that case the Supreme Court held that a liquor dealer in Chattanooga, Tennessee, who solicited orders for sale of intoxicating liquors by a circular, sent through the United States mail from Chattanooga to a person in this State, where the sale of intoxicating liquors is prohibited, did not violate the criminal statutes of this State. In the present case there was no soliciting of orders by the plaintiff, but it shipped the liquor directly into this State without any order from the consignee, where, if a sale had been made, it would have been in palpable violation of the law of this State. Dealers in intoxicating liquors outside of this State can not in this manner create interstate-commerce and expect to be protected under the provisions of the Federal constitution. *Cureton* v. *State,* 136 *Ga.* 91 (70 S. E. 786).             *Judgment affirmed.*